TONY SPYCHALLA FARMS, INC., Plaintiff-Respondent-Cross Appellant,

v.

HOPKINS AGRICULTURAL CHEMICAL COMPANY and Agri-Chem Insurance Company, Ltd., Defendants-Appellants-Cross Respondents.†

Court of Appeals

*No. 87–1942. Orally argued May 11, 1989.—Decided June 20, 1989.*

(Also reported in 444 N.W.2d 743.)

†Petition to review denied.

431

For defendants-appellants-cross respondents there were briefs and oral argument by *Russell T. Golla* of *Anderson, Shannon, O'Brien, Rice & Bertz,* Stevens Point.

For plaintiff-respondent-cross appellant there were briefs and oral argument by *Joseph J. Beisenstein* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Hopkins Agricultural Chemical Company appeals a judgment awarding Tony Spychalla Farms, Inc., $227,050 under a strict liability theory for damages to seed potatoes caused by Captan dust that Hopkins manufactured. Hopkins asserts that Spychalla cannot recover in strict liability for damage to property and that Spychalla does not have a cause of action for economic damages based upon loss of expectation of performance of Hopkins' product. Hopkins also raises a variety of other issues regarding the sufficiency of the evidence on both liability and damages. Spychalla cross-appeals, arguing that the jury erroneously reduced his damage award by five percent, the amount of negligence it attributed to him. He also contends that he is entitled to recover $75,920 in interest expenses.

We conclude that Wisconsin law recognizes a cause of action in strict liability for actual damages a defective product causes to property, and that Spychalla's loss involved such damage. Because we also reject the parties' remaining arguments, we affirm the judgment.

Spychalla has been a potato farmer in Antigo for over thirty years. He is a certified seed grower, *i.e.,* the potatoes he grows are generally sold to other farmers to be planted as seed the following year. There are two kinds of seed. Whole seed, or "B" seed, consisting of relatively small tubers that are planted whole, and cut seed, consisting of larger tubers cut into pieces and planted.

After harvesting his potatoes in fall, 1982, Spychalla treated his crop with a chemical called Fusarex before storing it for the winter. Fusarex is a dust that forms a gas around the treated potatoes and acts as a sprout suppressant. He planted as usual in the spring of 1983.

434

However, before planting the cut seed, he treated it with Hopkins' Captan dust to prevent the seed from rotting before it had a chance to sprout. This treatment is apparently done when the weather is cold and wet, rendering the seed more susceptible to rot.

In mid-June, Spychalla noticed that there was little or no plant emergence in some portions of his fields, and that some of the plants appeared stunted. He dug up some of the seed potatoes and found that they were petrifying. Spychalla's 1983 potato crop was substantially reduced.

In December, 1983, Spychalla filed suit against Hopkins, which manufactured and distributed the dust, and Allen Supply Co., the retailer who sold the dust to Spychalla. The complaint alleged that the dust caused "extensive damage and loss of production to the plaintiff's potato crop resulting [in] loss of income, increased production costs, increased costs in attempting to mitigate the loss, and serious cash flow shortage to the plaintiff's business." The theories advanced were express and implied warranty, strict liability and negligence (failure to warn of product's effects). However, the case was only submitted to the jury on the strict liability theory. The jury found that:

1. The Captan dust sold to Spychalla in 1983 was defective so as to be unreasonably dangerous to the potato seed;

2. This defect was a cause of crop damage sustained by Spychalla Farms in 1983;

3. The Fusarex was not defective so as to be unreasonably dangerous to the potato seed;

4. Spychalla Farms was negligent with respect to its 1983 potato crop; and

5. This negligence was a cause of crop damage sustained by Spychalla Farms in 1983.

(Paraphrased from special verdict.) In apportioning negligence, the jury found Hopkins ninety-five percent causally negligent and Spychalla five percent causally negligent. It then awarded $239,000 as the sum that would fairly and reasonably compensate Spychalla Farms for damages to its 1983 crop.

Hopkins first argues that Wisconsin law permits no recovery under the strict liability theory for damages Spychalla sustained. This presents a question of law that we review independently of the trial court's determination. *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 915, 437 N.W.2d 213, 215 (1989). Hopkins argues that the strict liability theory was adopted solely to create a cause of action where a product causes personal injury, and that expanding the theory to encompass property damage is an unnecessary and undesirable extension of current law. We disagree that the application of the theory in this case represents an extension of current law.

■ The theory of strict liability was adopted in Wisconsin in *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967). In *Dippel,* the supreme court specifically adopted the rule of strict liability as set forth in sec. 402A of the Restatement (Second) of Torts (1965). Section 402A provides:

> **Special Liability of Seller of Product for Physical Harm to User or Consumer.**
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or *to his property* is subject to liability for physical

harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (Emphasis supplied.)

The adoption of sec. 402A allows recovery for both personal injury and property damage caused by a defective product that is unreasonably dangerous to the user or his property. Hopkins argues that this rule was modified in *Sunnyslope* so as to preclude recovery here.

We do not find *Sunnyslope* authoritative as to whether strict liability may be used to recover for property damage caused by a defective product that is unreasonably dangerous when the defective product damages other property. The court in *Sunnyslope* held that "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly, as here, where the warranty given by the manufacturer specifically precludes the recovery of such damages."

The product under consideration in *Sunnyslope* was a backhoe, a piece of construction equipment. Certain parts of the backhoes broke or wore out, but these failures did not cause any personal injury, nor did they

damage any property other than the backhoes themselves. The basis of the claim in *Sunnyslope* was the purchaser's claim for economic loss as a result of the defective condition of the backhoes themselves. Thus, in *Sunnyslope,* the defective product did not cause injury to another person or property; rather, it involved a product that failed to function as expected or anticipated by the purchaser. Therefore, the *Sunnyslope* holding does not apply here, where a defective product damages other property.

Hopkins also argues that Spychalla is precluded from recovering for economic loss as a result of the damage done to his seed potatoes by the application of Hopkins' Captan dust. Hopkins argues that Spychalla's real claim is for a loss of expectation as to how the product would work. Hopkins claims that the product did not damage the crop directly but failed to prevent damage that it was designed to prevent. As such, it was a failure in the expectation of performance rather than damage to other property and thus falls within the rule enunciated in *Sunnyslope.*

There are two problems with this argument. First, the jury found that the product was defective and unreasonably dangerous, and that it caused damage to the seed potatoes and Spychalla's crop. The seed potatoes did not rot, which the Captan dust was designed to prevent. Rather, at least according to Spychalla's evidence, they were petrified by the application of Hopkins' product. This in turn affected the crop's growth.

We will not reverse a jury's factual findings that are supported by credible evidence. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). Because credible evidence supports the jury's factual findings that the Captan dust was defective and unrea-

sonably dangerous, causing damage to Spychalla's property, the facts of this case fall outside the scope of *Sunnyslope*. For this reason, we need not address Hopkins' contention that a failure of performance or a loss of expectation of performance are insufficient to allow a claim in strict liability. This issue may be addressed in a future case where the facts disclose a failure of performance rather than actual damage done to other property.

The second reason Hopkins' argument fails is that the *Sunnyslope* holding only applies where there is, in addition to damage to the defective property itself, a commercial transaction in which the parties have equal bargaining power and have agreed or contracted for allocation of risk of loss. Hopkins argues that because Spychalla was a commercial seed potato grower, the purchase of the Captan dust from Hopkins was a commercial transaction and that Hopkins' sole liability to Spychalla is stated on the warranty located upon the product itself. This warranty read as follows:

### NOTICE OF WARRANTY

Seller makes no warranty, express or implied, concerning the use of this product other than indicated on the label. Buyer assumes all risk of use and/or handling of this material when such use and/or handling is contrary to label instruction.

We do not agree that even in a commercial transaction a product manufacturer may limit liability by the use of a warranty to damage done to another's property by a defective product that is unreasonably dangerous to the user or his property. This is exactly the issue *Sunnyslope* said it was not addressing. *Id.* at 911, 437 N.W.2d at 213. The contractual limitation recognized in *Sunnyslope* applies only to the liability for defects within the product itself. *Sunnyslope* does not permit a

manufacturer to claim a contractual limitation on his liability when a defective product that is unreasonably dangerous causes injury to the purchaser or his property.

Alternatively, even if *Sunnyslope* were to apply here to allow a warranty to limit recovery, the "warranty" involved did not clearly allocate the burden of this loss to Spychalla. The only arguable contractual allocation of risk between Spychalla and Hopkins was reflected in the warranty. Hopkins argues that the warranty's terms merely guarantee that the bag contains the ingredients in the proportion represented. Such a warranty does not address the allocation of risk of loss, nor does it encompass who among the parties will be responsible for the defective performance of Hopkins' product. Even where the product injures only itself, absent a clear allocation of risk contemplated by the parties and raised by the facts of the case, the limitations of *Sunnyslope* do not apply.

Because we conclude that Spychalla may recover in strict liability, we now must address the remaining issues raised by Hopkins. Hopkins alleges a series of errors cloaked in various terms surrounding the jury's finding of liability. However, most of them amount to a challenge of the sufficiency of the evidence. Hopkins first argues that the trial court erred by refusing to give a res ipsa instruction to the effect that, to prevail, the burden was on Spychalla to negate all other reasonably possible causes of the seed damage. However, this argument assumes that the jury could only find liability by resorting to a res ipsa inference. Because this is not the case, the trial court did not err by refusing to give this instruction. Instead, we treat Hopkins' argument as being a challenge to the sufficiency of the evidence on liability.

Whether the Captan dust was defective and unreasonably dangerous is a question of fact, and we affirm a jury's factual determination as long as it is supported by credible evidence. *Poling v. Wisconsin Physicians Serv.,* 120 Wis. 2d 603, 608, 357 N.W.2d 293, 296 (Ct. App. 1984). Spychalla concedes that his experts were unable to pinpoint the exact defect in the dust that led to the crop damage. Nonetheless, the record contains credible circumstantial evidence to support the finding of a defect. Spychalla's experts maintained that "the only logical and probable conclusion" was that the dust was defective and unreasonably dangerous. Professor Walt Stevenson, one of Spychalla's experts, made various side-by-side observations and stand data comparisons. From this, he concluded that the undusted seeds were generally growing better than the dusted seed and that the only common denominator with respect to the seeds that did not grow was that they had been treated with Captan dust.

We also disagree with Hopkins' statement that these opinions were based on mere speculation. An expert may give an opinion if it is based upon facts that are either undisputed or within his personal knowledge. *Bituminous Cas. Corp. v. United Military Supply, Inc.,* 69 Wis. 2d 426, 433, 230 N.W.2d 764, 768 (1975). It is the fact finder's duty to determine whether the facts underlying an expert opinion are true. *State ex rel. Fort Howard Paper Co. v. State,* 82 Wis. 2d 491, 503, 263 N.W.2d 178, 184 (1978). The credibility, sufficiency and weight of expert evidence are for the fact finder to determine. *Id.*

These opinions were based on evidence indicating that it was the Captan dust-treated seeds that failed to

grow. These patterns were observed by Stevenson when he performed the stand comparisons. The record also contains evidence that, upon digging up some of the treated seeds, they were found to be petrified, which was an unusual occurrence. This evidence, if believed by the jury, would support the expert opinions presented. The fact that there may be weaknesses in this expert testimony goes only to the expert's credibility and the weight to be attributed to his testimony by the jury. It does not provide us with a basis for reversing the jury's finding of liability.

■■

Hopkins next makes a series of arguments that amount to a challenge to the jury's damage award. Again, we will sustain a jury's damage award as long as it is supported by credible evidence. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 442, 405 N.W.2d 354, 372 (Ct. App. 1987). To support a damage award, the evidence must demonstrate that a party was injured in some way and establish sufficient data from which the jury could properly estimate the amount of damages. *Plywood Oshkosh, Inc. v. Van's Realty & Const., Inc.,* 80 Wis. 2d 26, 31, 257 N.W.2d 847, 849 (1977).

Spychalla's accountant, John Fixmer, testified at the trial regarding the amount of damages Spychalla sustained. Using maps, yield data, shipping records for the 1983 crop, and other information given to him, Fixmer arrived at a $251,490 damage figure. He compared the yield from the dusted versus the undusted acreage, arriving at a loss figure of 32,472 hundred weight. He multiplied this by $8.14, the average price per bag. He made some minor adjustments before arriving at the bottom line figure.

As Hopkins in fact argues, this methodology could be attacked on several grounds. Spychalla failed to compile actual per variety and plot yield records for the dusted versus the undusted seed. Apparently, he only retained the actual per plot yield records, so the yields of the varieties had to be averaged, and he lost some records that apparently would have aided in arriving at a damage estimate. However, these weaknesses go to the weight and credibility of Spychalla's proof on damages. Subject to a slight reduction, the jury accepted Fixmer's calculations. This finding is supported by credible evidence.

Next, Hopkins argues that the trial court erred by failing to put a question on the special verdict asking the jury to determine the amount of Spychalla's damages for which Hopkins was responsible. However, this was done in the usual manner, by first determining liability, awarding damages, and then apportioning the liability. There was no error in this regard.

Finally, for the reasons articulated above, we also reject Hopkins' claims that the verdict was perverse and excessive and that it is entitled to a new trial in the interest of justice.

Spychalla raises two issues on his cross-appeal. First, he argues that we should increase his damage award from $239,000 to $251,490 to correspond to Fixmer's testimony. He contends that because the deviation between these two figures is approximately five percent and the jury found him five percent causally negligent, the jury must have erroneously reduced the damage award by five percent before answering the damage question on the verdict.

We reject this argument. There is no other evidence indicating that this is in fact what the jury did. Furthermore, there are other possible reasons why the jury might have reduced Fixmer's damage figure. For example, there was some dispute over whether Spychalla was entitled to recover all or part of $11,000 for various expenses he was claiming.

Second, Spychalla argues that he is entitled to recover an additional $75,920 in interest expenses. He argues that because his debt loan in 1983 exceeded $240,000, the amount of income he lost, he could not reduce his debt load. This inability to reduce the debt load in 1983, he alleges, resulted in a loss to him of $75,920 for interest payments he had to make. The trial court held that this constituted prejudgment interest and refused to allow recovery.

Basically, Spychalla is arguing that receiving $240,000 now is not the same as receiving it in 1983. We agree. However, this does not render the interest expenses recoverable. Prejudgment interest may be awarded only if there is a reasonably certain standard of measurement by which one can ascertain the amount of damages prior to judicial determination. *Klug & Smith Co. v. Sommer,* 83 Wis. 2d 378, 384, 265 N.W.2d 269, 272 (1978). This is not such a case. There was a genuine dispute as to the amount of Spychalla's damages throughout the trial. Therefore, Spychalla was not entitled to recover the amount of interest claimed.

*By the Court.*—Judgment affirmed. Costs denied to both parties.