902 F.2d 573
 11 UCC Rep.Serv.2d 1131, Prod.Liab.Rep.(CCH)P 12,453
Jordan A. MILLER and J. Donna Miller, doing business as
Office on the Square, Plaintiffs-Appellants,
v.
UNITED STATES STEEL CORPORATION, Defendant and
Third-Party/Plaintiff-Appellee,
v.
MILLER & MEIER & ASSOCIATES, ARCHITECTS & PLANNERS,
INCORPORATED and Selzer-Ornst Company, Third-Party
Defendants.
 Nos. 89-2533, 89-2587.
 United States Court of Appeals, Seventh Circuit.
 Argued April 13, 1990.
Decided May 15, 1990.
As Amended May 17, 1990.
Rehearing Denied July 12, 1990.
 
 E. Campion Kersten, Leslie M. Loftus, Kersten & McKinnon, Milwaukee, Wis., for Jordan A. Miller and J. Donna Miller.
 William J. McKim, David A. Luptak, Roger L. Wise, Law Dept., Pittsburgh, Pa., for U.S. Steel Corp.
 Thomas L. Shriner, Jr., David E. Beckwith, Cynthia Obremski, Foley & Lardner, James F. Boyle, Edmund W. Powell, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., Donald P. Schneider, Schellinger & Doyle, Brookfield, Wis., Donald M. Lieb, Otjen, Vanert, Stangle, Lieb & Weir, Milwaukee, Wis., for Miller & Meier & Associates, Architects & Planners, Inc.
 Before CUDAHY, POSNER, and FLAUM, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 We are asked to decide whether this products liability suit, which arises under the diversity jurisdiction, is barred by the "economic loss" doctrine. Rardin v. T & D Machine Handling, Inc., 890 F.2d 24 (7th Cir.1989). The parties agree that Wisconsin law governs. The plaintiffs, Mr. and Mrs. Miller, own an office building in Milwaukee, consisting of an original structure completed in 1969 and an addition completed in 1976. Mr. Miller is an architect and designed the building, including the addition. The exterior walls both of the original building and of the addition are of "Cor-Ten" steel, manufactured by the defendant, U.S. Steel, which sold the steel to a subcontractor, since defunct, who fabricated it into steel panels that were then installed by the project's general contractor.
 
 
 2
 Cor-Ten is a "weathering" steel; its outer layer is supposed to rust, forming a protective coat that resists further corrosion without need for paint or other coating. Its anti-corrosive properties were talked up in promotional literature that U.S. Steel distributed in the late 1960s when the plaintiffs' building was being designed; and representatives of U.S. Steel met with Mr. Miller and urged him to specify Cor-Ten in the design for the building, which he did. There was never a signed contract between Miller and U.S. Steel.
 
 
 3
 By 1979 it was apparent that the Cor-Ten installed on the Millers' building was rusting right through and would have to be replaced. In 1984 the Millers brought this suit to recover the cost of replacing the panels. U.S. Steel impleaded other firms that had been involved in the construction of the building and addition, but the third-party claims are of no significance and we shall dismiss the appeal arising from them as moot. The Millers' case against U.S. Steel went to trial and a jury determined that the Cor-Ten had indeed been defective and that it would cost $180,000 to replace the walls of the original building. But the jury awarded the plaintiffs nothing, because it determined that Mr. Miller's negligence in designing the building was 80 percent responsible for the corrosion of the walls, and under Wisconsin's comparative-negligence doctrine the plaintiff takes nothing unless the jury finds that the defendant was at least 50 percent at fault. Wis.Stat. Sec. 895.045. The trial had been confined to the original building because the judge had ruled that U.S. Steel's liability for the addition was barred by the statute of limitations. The paradox that the younger claim was time-barred and the older one not is due to the fact that the statute of limitations that would have barred the older claim had been held unconstitutional by the Supreme Court of Wisconsin. After the trial the statute of limitations that barred the younger claim was held unconstitutional too, and this is one of several grounds on which the Millers urge us to reverse.
 
 
 4
 The Millers are attempting to use tort law to recover the cost of replacing a defective product sold to them for use in their business. This cost is called in law an "economic loss," to distinguish it from an injury to the plaintiff's person or property (property other than the product itself), the type of injury on which a products liability suit usually is founded. It would be better to call it a "commercial loss," not only because personal injuries and especially property losses are economic losses, too--they destroy values which can be and are monetized--but also, and more important, because tort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law. Products liability law has evolved into a specialized branch of tort law for use in cases in which a defective product caused, not the usual commercial loss, but a personal injury to a consumer or bystander.
 
 
 5
 An increasing number of jurisdictions hold that tort law provides no remedy in a case in which the plaintiff is seeking to recover for a commercial loss rather than damage to person, property, or reputation. Rardin v. T & D Machine Handling, Inc., supra, reviews the leading cases establishing this economic loss doctrine. 890 F.2d at 27-28. A few months earlier the Supreme Court of Wisconsin had jumped on the economic loss bandwagon in Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc., 148 Wis.2d 910, 437 N.W.2d 213 (1989), although its adoption of the doctrine had been anticipated, as we shall see. The Millers (our Millers) emphasize that Sunnyslope was a particularly strong case for applying the doctrine, because the parties had a formal contract containing express warranties. The plaintiff had bought construction equipment from the defendant that proved to be defective. It could have sued the defendant for breach of warranty. The tort suit was completely gratuitous. Our Millers had no contract with U.S. Steel, so we cannot be certain that the Supreme Court of Wisconsin would apply the doctrine in our case. But we think it would. Privity of contract is not an element of the economic loss doctrine. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 875, 106 S.Ct. 2295, 2304, 90 L.Ed.2d 865 (1986); Rardin v. T & D Machine Handling, Inc., supra, 890 F.2d at 28; Twin Disc, Inc. v. Big Bud Tractor, Inc., 772 F.2d 1329, 1331-34 (7th Cir.1985); Anderson Electric, Inc. v. Ledbetter Erection Corp., 115 Ill.2d 146, 152-53, 104 Ill.Dec. 689, 692, 503 N.E.2d 246, 249 (1986). The insight behind the doctrine is that commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage. A disputant should not be permitted to opt out of commercial law by refusing to avail himself of the opportunities which that law gives him. Back when U.S. Steel was urging Mr. Miller to specify Cor-Ten steel for the walls of his building, he could have asked U.S. Steel for an express warranty, which he could then have enforced in a suit for breach of warranty. In fact, as we shall see, the literature that U.S. Steel put out contained an enforceable warranty, just as in AMPAT/Midwest, Inc. v. Illinois Tool Works Inc., 896 F.2d 1035, 1040-41 (7th Cir.1990). Alternatively, Miller could have extracted (again, for all we know, did extract) suitable warranties from the general contractor, which might in turn have extracted a warranty from U.S. Steel. All Miller could not do was what he did do, recast this case as if one of the corroded wall panels had fallen and broken his foot.
 
 
 6
 Of decisions refusing to confine the economic loss doctrine to cases in which the plaintiff and defendant are in privity of contract, Twin Disc (a case in which the plaintiff was in privity with only one of the two defendants, yet we held both claims barred by the economic loss doctrine) is particularly significant, because it is an interpretation of Wisconsin law and anticipated and was discussed approvingly in Sunnyslope. City of La Crosse v. Schubert, Schroeder & Associates, Inc., 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976), contains a contrary dictum, but that decision was confined to its facts by Sunnyslope (148 Wis.2d at 921, 437 N.W.2d at 216)--the polite formula for overruling. Sunnyslope itself reserves, we think out of an abundance of caution, the disposition of the case where there is no warranty. 148 Wis.2d at 917, 437 N.W.2d 217-18. And Tony Spychalla Farms, Inc. v. Hopkins Agricultural Chemical Co., 151 Wis.2d 431, 439, 444 N.W.2d 743, 747-48 (1989), a decision by the intermediate court in Wisconsin, contains a similar, indeed a more emphatic, reservation. But the reservation has no importance in our case, for on similar facts the Supreme Court of Wisconsin held after Sunnyslope that the failure to carry through on express representations that induce a person to sign a contract with a third party is actionable in a suit for breach of warranty. Paulson v. Olson Implement Co., 107 Wis.2d 510, 319 N.W.2d 855 (1982). So there was a contract between the Millers and U.S. Steel, and the economic loss doctrine, even if narrowly construed, bars the Millers from bypassing contract and suing in tort. For there was no gap in liability--no danger that the Millers would fall between the stools of tort and contract. Speidel, Warranty Theory, Economic Loss, and the Privity Requirement: Once More Into the Void, 67 B.U.L.Rev. 9 (1987). They could and should have sued in contract; unfortunately they waited too long.
 
 
 7
 They argue, it is true, that there was property damage in this case, because the corrosion of the walls resulted in water damage inside the building. Incidental property damage, however, will not take a commercial dispute outside the economic loss doctrine, Chicago Heights Venture v. Dynamit Nobel of America, Inc., 782 F.2d 723, 726-29 (7th Cir.1986); the tail will not be allowed to wag the dog. In any event, the Millers have not sued for any of the so-called property damage that they sustained but only for the cost of replacing or repairing the steel--the defective product.
 
 
 8
 The judgment in No. 89-2533 is affirmed. Appeal No. 89-2587 is dismissed as moot. Costs to U.S. Steel in No. 89-2533; no award of costs in No. 89-2587.