HAP'S AERIAL ENTERPRISES, INC., Plaintiff-Appellant,

v.

GENERAL AVIATION CORPORATION, and Aig Aviation,
Inc., Defendants-Respondents.

Court of Appeals

*No. 91–2129. Submitted on briefs March 26, 1992.—Decided
December 30, 1992.*

(Also reported in — N.W. 2d —.)

459

For the plaintiff-appellant the cause was submitted on the brief of *David V. Scott* of New Albany, Indiana, and *Martin W. Harrison* of *Allen, Harrison, Williams, McDonnell & Swatek* of Whitewater.

For the defendants-respondents the cause was submitted on the brief of *Michael R. Wherry* and *Julie K. Brown* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   Hap's Aerial Enterprises, Inc., appeals from a summary judgment dismissing its complaint against General Aviation Corporation. Hap's claims damages for General's negligent inspection of an aircraft performed for its prior owner, Regal Beloit Corporation. The issue is whether Hap's, as a subsequent buyer of the used aircraft, can recover purely economic damages in a negligence action against General. We conclude that if General's negligence is established, Hap's can recover damages for its economic loss, unless public policy considerations prevent recovery. The facts should be developed to allow the trial court not only to determine if General was negligent but to evaluate the policy considerations. We therefore reverse and remand.

Trial courts and appellate courts apply the same summary judgment methodology. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The cases explaining that methodology are legion, and we need not review it. Nor need we follow it step-by-step, since the material facts on which the trial court relied are undisputed.

The complaint alleges that on July 13, 1988, the defendant General Aviation performed a "hot section inspection" on the engines of an aircraft. It is undis-

puted that General Aviation inspected the aircraft for its then owner, Regal Beloit Corporation, and that as part of its inspection, General had to check each turbine wheel and grind its surface to obtain the required tolerance. Hap's bought the aircraft from Regal soon after General's inspection. In October 1988, Hap's sold the aircraft, subject to a "pre-buy inspection." During that inspection Hap's learned that because General negligently performed its July inspection, Hap's had to repair the engines in order to sell the aircraft. Hap's incurred repair expenses of $22,997 and lost $535 in interest on its sale. It sues General Aviation for those amounts.

Relying primarily on *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989), and *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir. 1990), the trial court dismissed the complaint on grounds that Hap's cannot recover damages for purely economic losses caused by General's negligence. In the court's view, the case law establishes that commercial disputes must be resolved by commercial rather than tort law, and purely economic or commercial losses can be recovered only in contract actions. The court declined to carve out an exception to what it considered the law by allowing commercial purchasers of used equipment to recover from parties who negligently provided service or parts to the equipment in the past. We disagree with the trial court's view of the law.

It is true that a commercial purchaser of goods or equipment from a seller cannot recover in this state for purely commercial losses which the buyer attributes to the seller's negligence. The *Sunnyslope* court established that law. *Id.* at 921, 437 N.W.2d at 217–18. In *Sunnyslope*, the purchaser of backhoes sued the seller for the cost of repairs not covered by the manufacturer's

warranties. The *Sunnyslope* court confined the purchaser to its contract remedies. The court said:

> We agree with the weight of authority which supports the proposition that the legislative protections granted by the Uniform Commercial Code are not to be buttressed by tort principles and recovery. The duty to provide a product which functions to certain specifications is contractual. If a commercial purchaser wants a machine of higher quality, better durability or one with a better warranty, the purchaser is free to negotiate in the marketplace.

*Id.* at 916, 437 N.W.2d at 215 (citation omitted).[1]

But Hap's bought the aircraft from Regal Beloit Corporation, not from General. No commercial transaction occurred between Hap's and General. Nothing in the complaint discloses any contact whatever between Hap's and General. Hap's simply bought an aircraft which it claims General had negligently inspected, and that negligence caused damages to Hap's.[2]

The United States Court of Appeals for the Seventh Circuit believes that the Wisconsin Supreme Court would extend the economic or commercial loss doctrine recognized in *Sunnyslope* to a commercial purchaser

---

[1] Sunnyslope bought the backhoes from a dealer for the manufacturer but the manufacturer had extended each purchaser a written warranty which limited manufacturer's liability to replacement of defective parts and provided that the manufacturer was not liable for any other damage, whether direct, incidental or consequential. Sunnyslope sought to recover lost profits and the cost of repairing the equipment when the manufacturer did not breach its warranty.

[2] In *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis. 2d 431, 438, 444 N.W.2d 743, 747 (Ct. App. 1989), we refused to extend the *Sunnyslope* holding to a commercial transaction where a defective product damaged other property.

such as Hap's who asserts a claim against a tortfeasor not in privity with the purchaser.[3] The Seventh Circuit held that the owner of an office in Wisconsin could not recover in tort against U.S. Steel for the cost of replacing defective steel U.S. Steel sold to a subcontractor who fabricated it into panels which the general contractor installed on the building. *Miller,* 902 F.2d at 574-75.[4] The *Miller* court relied on its previous decision in *Rardin v. T & D Mach. Handling, Inc.,* 890 F.2d 24 (7th Cir. 1989), as a leading case establishing the economic loss doctrine.

In our view, however, when compared with Wisconsin precedent, the analysis in *Rardin* shows why the Wisconsin Supreme Court is unlikely to approve the *Miller* court's application of the "economic loss" doctrine.

---

[3] The Seventh Circuit's interpretation of Wisconsin law does not bind us. *See LeClair v. Natural Resources Bd.,* 168 Wis. 2d 227, 238, 483 N.W.2d 278, 283 (Ct. App. 1992) (federal district court's interpretation of state law not binding on Wisconsin courts).

[4] In *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295 (7th Cir. 1991), the Seventh Circuit held that Wisconsin would recognize a tort claim by a third party against an employer arising out of the negligent supervision of an employee but would not permit the recovery of purely economic losses for the tort. The seventh circuit said, "As this court noted in *Miller v. United States Steel Corp.,* 902 F.2d 573, 574-75 (7th Cir. 1990), there is now substantial evidence that Wisconsin would decline in all circumstances to allow a negligence suit for the recovery of only economic damages, even when there is no contractual relationship between the parties." *Midwest Knitting,* 950 F.2d at 1300 (footnote omitted). The Wisconsin Supreme Court has not yet declared that to be the law of this state, and we think that when presented squarely with the question, it will not.

In *Rardin* the plaintiff bought a used printing press from Whitacre for use in his business. The contract provided that Whitacre was responsible only for such damage to the press as might be incurred due to the fault or negligence of its own employees, agents, contractors or representatives. Whitacre hired the defendant T & D Machine Handling to dismantle and load the press on a truck. T & D negligently performed its tasks and damaged the press. Rardin incurred repair costs and lost business profits during the repairs and sued T & D for its damages. The *Rardin* court held that T & D had no liability under Illinois law in negligence for Rardin's economic losses.

The *Rardin* court reasoned that to conclude that a person is "negligent is to affirm that the costs of care to him were less than the costs of his carelessness to all who might be hurt by it; that, essentially, is what negligence means, in Illinois and elsewhere." *Id.* at 26. The court said that

> [i]n deciding how much effort to expend on being careful—and therefore how far to reduce the probability of a careless accident—the potential injurer must have at least a rough idea of the extent of liability.

*Id.* T & D was not privy to the circumstances of the owners of the presses, did not deal directly with Rardin, and knew nothing about his business, and could not have determined the financial consequences to Rardin if the press was damaged. *Id.* Rardin, the court said, could have protected himself against the financial consequences of unexpected delay. He could have contracted out some of his printing work in advance, bought business interruption insurance, or negotiated for a liqui-

dated damages clause in his contract with his seller to compensate him for the delay. *Id.* at 27.

Perhaps Hap's could have taken measures comparable to those the *Rardin* court recommended to protect itself from economic loss resulting from the defective condition of the aircraft it bought from Regal. However, the present law of Wisconsin does not prevent Hap's from recovering commercial or economic damages caused by the negligence of a third-party who dealt with Regal. The Wisconsin Supreme Court has twice held that the defendant who negligently provides services to one person may be liable for economic losses resulting to a third person, unless public policy dictates otherwise.

In *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 214 N.W.2d 764 (1974), an architect did not contract with the plaintiffs, but the architect knew that the plaintiffs would operate a supermarket in the building the architect was designing for the contractor. The plaintiffs suffered economic losses when the building floor settled because of a design failure. The *A.E.* court held that the plaintiff's complaint against the architect stated a claim in negligence. *Id.* at 486-87, 214 N.W.2d at 768. The court said, "A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs."[5] *Id.* at 484, 214 N.W.2d at 766. The court expressly held that damages for "economic loss" may be recovered in a negligence action, unless public policy considerations require otherwise. *Id.* at 490 91, 214

[5] Thus, the *Rardin* court's declaration that negligence means that the costs of care to the actor are less than the costs to all who might be harmed, *Rardin,* 890 F.2d at 26, is simply irrelevant to the Wisconsin definition of negligence.

N.W.2d at 770. The court remanded the matter for trial on the negligence and causation issues and for consideration whether public policy should prevent recovery. *Id.* at 491, 214 N.W.2d at 770.

In *Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis. 2d 376, 335 N.W.2d 361 (1983), a firm of certified public accountants was alleged to have negligently prepared financial statements for a company to which the plaintiff bank made a loan after reviewing the statements. When the company went into receivership, the bank sued the accounting firm for its loss on the loan caused by the firm's negligence. That loss was necessarily "economic" or "commercial." The *Citizens* court said, "The fundamental principle of Wisconsin negligence law is that a tortfeasor is fully liable for all foreseeable consequences of his act except as those consequences are limited by policy factors,"[6] *Id.* at 386, 335

---

[6] The fundamental principle of Wisconsin negligence law does not apply to the liability of attorneys to non-clients. An attorney is not liable to a non-client plaintiff for mere negligence. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 307, 401 N.W.2d 816, 817 (1987). An exception-to-the-exception exists. The attorney who draws a will is liable to the intended beneficiary who received nothing by reason of the attorney's negligence. *Auric v. Continental Casualty Co.,* 111 Wis. 2d 507, 509, 331 N.W.2d 325, 327 (1983). The statement in *Citizens* that liability is limited to *foreseeable* consequences must be read in light of the facts in that case. In his affidavit, the president of the accounting firm acknowledged that he knew that financial statements are commonly supplied to lenders. The *unforeseeable* consequences, if any, of the firm's alleged negligence was not at issue. The cases relied on by the *Citizens* court held, in one way or another, that a tortfeasor is liable for unforeseeable consequences as well as foreseeable ones. The Wisconsin Supreme Court recently confirmed this position. *Paskiet v. Quality State Oil Co.,* 164 Wis. 2d 800, 808, 476 N.W.2d 871, 874 (1991). We recently applied the princi-

N.W.2d at 366, and remanded the matter for a full factual resolution. *Id.* at 387, 335 N.W.2d at 366.[7]

Distinctions exist between the facts before us and the facts in *A.E.* and *Citizens*. For one thing, in those cases the defendants were professionals.[8] For another, in *A.E.*, the architects knew that the plaintiff supermarket operator was to operate a store in the building the architect had designed, and in *Citizens,* a member of the accounting firm may have known that the statements his firm prepared would be used by the bank. *Citizens,* 113 Wis. 2d at 380, 335 N.W.2d at 363. However, those distinctions do not affect the principle applied in both *A.E.* and *Citizens*: the person who commits an act when some harm to someone is foreseeable is negligent, and a negligent person is liable for unforeseeable consequences

ple and the public policy considerations in *Cormican v. Larrabee,* 171 Wis. 2d 309, 491 N.W.2d 130 (Ct. App. 1992).

[7] The public policy considerations outlined in *Citizens*, 113 Wis. 2d at 387, 335 N.W.2d at 366, include the following:

(1) The injury is too remote from the negligence; or, (2) the injury is wholly out of proportion to the culpability of the negligent tortfeasor; or, (3) in retrospect it appears highly extraordinary that the negligence has brought about the harm; or, (4) recovery places too unreasonable a burden on the negligent tortfeasor; or, (5) recovery is too likely to open the way for fraudulent claims; or, (6) recovery will enter a field having no sensible or just stopping point.

[8] In *Milwaukee Partners v. Collins Engineers, Inc.*, 169 Wis. 2d 355, 363-64 n.3, 485 N.W.2d 274, 277 n.3 (Ct. App. 1992), we said that although in Wisconsin a tort remedy for economic damages is not available to a purchaser in a commercial setting where an effective warranty exists between the parties, breach of a professional obligation of due care is a tort, and unless public policy considerations against liability intervene, professionals in Wisconsin (in that case, engineers) are liable in tort for economic damages regardless of whether a contractual relationship exists between the parties.

to unforeseeable plaintiffs. *A.E. Inv. Corp.*, 62 Wis. 2d at 484, 214 N.W.2d at 766.

We conclude that the matter must be remanded to the trial court to determine whether General negligently inspected the engines of the aircraft Hap's bought from Regal and whether that negligence caused the economic damages Hap's claims in its complaint. If General contends that public policy reasons should protect it from liability, each side should be allowed to present evidence on that issue.

*By the Court.*—Judgment reversed and remanded with directions.