MIDWEST HELICOPTERS AIRWAYS, INC., an Illinois corporation; Midwest Truxton International, Inc., an Illinois corporation, subrogors; and the Home Insurance Company, Inc., a New Hampshire corporation, subrogee, Plaintiffs,

v.

SIKORSKY AIRCRAFT, A DIVISION OF UNITED TECHNOLOGIES CORPORATION, a Delaware corporation, Defendant.

Civ. A. No. 91–C–1393.

United States District Court, E.D. Wisconsin.

Feb. 23, 1994.

Kenneth D. Ross, Ross & Harrington, Chicago, IL, for plaintiffs.

Eric J. Van Vugt, Quarles & Brady, Milwaukee, WI, for defendant.

Michael R. Wherry, Davis & Kuelthau, S.C., Milwaukee, WI, Richard J. Durden, Adler, Kaplan & Begy, Chicago, IL, for third-party defendants.

## ORDER

TERENCE T. EVANS, Chief Judge.

This products liability case arises out of a helicopter crash that occurred on April 11, 1989. The helicopter was owned by Midwest Truxton International, Inc. and operated by Midwest Helicopters Airways (collectively "Midwest"). The helicopter was manufactured by defendant Sikorsky Aircraft.

Sikorsky originally manufactured the helicopter for the German military in the early 1960's. In 1974, Sikorsky reacquired and remanufactured the helicopter for civilian use. Between 1975 and 1986, the aircraft was owned by various parties, including domestic and international companies.

Midwest purchased the helicopter from the City of Santa Rosa, New Mexico, on January 11, 1986. Midwest did not have a contractual relationship with Sikorsky. Midwest Truxton entered into a long-term lease agreement with Midwest Helicopters for the use of the helicopter, and this lease was in effect at the time of the crash.

On April 11, 1989, a Midwest pilot was operating the helicopter to move an air conditioning unit from the roof of a building when the tail rotor drive system failed. The helicopter crashed. Shortly after the crash, Midwest's insurer, the Home Insurance Company, paid Midwest's claim for property damage. Home then brought an action against Sikorsky seeking damages for its subrogated interest.

In addition, Midwest claims losses it sustained as a result of the damage to and loss

of use of the helicopter. The damages include the policy deductible, expenses for the cost of locating, acquiring, and upgrading a replacement helicopter, loss of revenue that would have been generated had the helicopter not crashed, and uninsured expenses incurred in investigating the accident and storing the wreckage. It seeks recovery on alternative tort theories of negligence and strict liability.

Sikorsky contends that the damages claimed by Midwest and Home are not recoverable in tort under Wisconsin law because they are barred by the "economic loss doctrine." Sikorsky therefore argues that it is entitled to summary judgment.

 Summary judgment is appropriate if the pleadings and submitted evidence show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant has the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). All evidence must be viewed in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences to be drawn from the underlying facts. *Fitzsimmons v. Best*, 528 F.2d 692 (7th Cir.1976). The nonmoving party, however, may not rest upon the mere allegations or denials in its pleading; they must affirmatively demonstrate, by specific factual showings, that there is a genuine issue of material fact requiring trial. Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

 My jurisdiction here rests on diversity. In this case, I must decide the matter in the same manner as would a Wisconsin state court. *Erie R.R. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the principle of *Erie R.R. v. Thompkins*, I "must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state." *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153,

155 (7th Cir.1987). If the state's highest court has not spoken on an issue, I must review all available data and predict how the state court would rule. *Huggins v. Sea Ins. Co.*, 710 F.Supp. 243, 246 (E.D.Wis.1989).

The facts are largely undisputed. The question of whether Wisconsin law allows recovery under these facts is a question of law. *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis.2d 910, 914, 437 N.W.2d 213 (1989). Sikorsky argues that the plaintiffs' claims are for "economic loss" only, that is, they have not claimed injury to the plaintiff's person or property. Whether the helicopter was actually defective and unreasonably dangerous is a question of fact.

 Wisconsin has adopted the "economic loss doctrine," which generally precludes recovery in a negligence or strict liability claim when the plaintiff's claim is characterized as solely economic loss. Economic loss is defined "as damages for inadequate value, because the product is inferior and does not work for the general purpose for which it was manufactured or sold." *Northridge Co. v. W.R. Grace & Co.*, 162 Wis.2d 918, 933, 471 N.W.2d 179 (1991).

In the landmark case, *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, the Wisconsin Supreme Court first adopted the economic loss doctrine. 148 Wis.2d 910, 437 N.W.2d 213 (1989). In *Sunnyslope*, the plaintiff had purchased a backhoe manufactured by the defendant. When the backhoe failed to perform properly, the plaintiff brought an action against the manufacturer for damages including the cost of replacement parts, labor charges (for repair work performed pursuant to a warranty), and lost profits. The trial court granted summary judgment in favor of the manufacturer because the plaintiff could not recover under any tort theory. On appeal, the Wisconsin Supreme Court limited its review to the question of "[w]hether damages to the product itself and economic losses flowing therefrom are recoverable in tort when a warranty exists in a commercial setting." *Id.* at 911, 437 N.W.2d 213. It concluded that the economic loss doctrine prevents a plaintiff from

recovering damages to the property itself when it could have brought an action for breach of warranty.

The court's decision in *Sunnyslope* left two significant questions unanswered. The first question is whether tort claims survive in the absence of privity. *Sunnyslope* limited the court's previous decision in *LaCrosse v. Schubert, Schroeder & Assoc., Inc.*, 72 Wis.2d 38, 240 N.W.2d 124 (1976), which had permitted recovery in strict liability for economic loss to cases in which there was no warranty or contract between the parties. It is unclear whether Wisconsin courts now would limit recovery for economic loss to contract remedies even where commercial parties lack privity. The second question remaining after *Sunnyslope* is whether tort claims survive when there has been damage to other property. This question has been directly addressed in later cases. A review of post-*Sunnyslope* case law provides guidance as to how a Wisconsin court would resolve these two important issues.

In *Tony Spychalla Farms, Inc. v. Hopkins Agricultural Chemical Co.*, 151 Wis.2d 431, 444 N.W.2d 743 (Ct.App.1989), a Wisconsin appellate court addressed the scope of *Sunnyslope*'s holding. In *Spychalla*, the plaintiff was a farmer who treated his seed potatoes with a chemical dust that was supposed to prevent rotting. A few months later, the farmer discovered that the dust had petrified the potatoes. He then brought an action against the manufacturer and supplier of the dust on theories of implied warranty, negligence, and strict liability. A jury found the manufacturer strictly liable. The manufacturer appealed and argued that recovery was precluded under the holding of *Sunnyslope*. The appellate court rejected that argument. Instead, it concluded that Wisconsin law recognizes a cause of action in strict liability for damages a defective product causes to property other than itself. *Id.* at 434, 444 N.W.2d 743. Consequently, it found that the *Sunnyslope* holding was inapplicable because the chemical dust had damaged other property, the potatoes. *Id.* at 438, 444 N.W.2d 743.

In addition, the court stated that *Sunnyslope* involved a contractual limitation, and that *Sunnyslope* "does not permit a manufacturer to claim a contractual limitation on his liability when a defective product that is unreasonably dangerous causes injury to the purchaser or his property." *Id.* at 439–40, 444 N.W.2d 743. The court found that *Sunnyslope*'s holding only applies when there is a commercial transaction which involves a contractual allocation of risk. *Id.*

The court of appeals had another opportunity to address the economic loss doctrine in *Midwhey Powder Co. v. Clayton Industries*, 157 Wis.2d 585, 460 N.W.2d 426 (Ct.App. 1990). In *Midwhey*, the plaintiff purchased an energy reduction system. One of the system's components was a steam generator manufactured by the defendant. When the generator failed to produce the energy savings the plaintiff expected, it brought an action in negligence, strict liability, and breach of warranty. The trial court dismissed the case on summary judgment.

The court of appeals affirmed the trial court's holding that the plaintiff had no cause of action in tort because there existed an effective warranty between the parties, and the warranty excluded claims for consequential damages. *Id.* at 588, 460 N.W.2d 426. The court reversed the grant of summary judgment because some factual issues remained, but noted that whatever relief the plaintiff sought must be provided by the Uniform Commercial Code. *Id.* at 594, 460 N.W.2d 426.

Next, in *Northridge Co. v. W.R. Grace & Co.*, the Wisconsin Supreme Court articulated the general rule that a "complainant's remedy for economic loss alone, without a claim for personal injury or physical harm to property other than the defective product itself, generally lies in a breach of warranty claim, not in a claim in tort." 162 Wis.2d 918, 926, 471 N.W.2d 179 (1991) *Northridge* provides significant guidance. In *Northridge*, property owners brought claims to recover damages because the defendant's fireproofing material containing asbestos was used in the construction of plaintiffs' shopping centers. The trial court dismissed the complaint for failure to state a claim upon which relief can be granted. In doing do, the court found that the plaintiffs' damages were barred by the economic loss doctrine because

they did not involve damage to other property. *Id.* at 922–23, 471 N.W.2d 179. The Wisconsin Supreme Court reversed the trial court's dismissal of the tort claims and held that the plaintiffs' claim included damage to other property, namely, the contamination of the air by asbestos particles. *Id.* at 937–38, 471 N.W.2d 179.

In *Northridge*, the court applied the economic loss doctrine analysis and determined that the plaintiffs' claim fell under an exception for claims involving damage to other property, as in *Spychalla.* Yet the parties in *Northridge* were not in privity. Significantly, the court noted in a footnote that the plaintiffs did not allege privity and therefore their claim for breach of warranty must be dismissed. *Northridge*, 162 Wis.2d at 938 n. 15, 471 N.W.2d 179. Because the court was aware that the parties were not in privity and still applied the economic loss doctrine, it is my opinion that under Wisconsin law privity is not an essential element of the economic loss doctrine.

My conclusion is buttressed by the Court of Appeals for the Seventh Circuit's decision in *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir.1990). In *Miller*, the plaintiffs had contracted for the installation of Cor–Ten steel walls. The walls were manufactured by U.S. Steel, but there was no contract between the parties. Claiming that the steel was defective, the plaintiffs sued U.S. Steel in tort. Writing for the court, Judge Posner reasoned that the economic loss doctrine barred recovery in tort because the plaintiffs could have extracted a warranty from U.S. Steel or the general contractor. He recognized that it was unclear under Wisconsin law whether the economic loss doctrine would apply, but he decided that it would because "[p]rivity of contract is not an element of the economic loss doctrine." *Id.* at 575. This statement, however, was dicta because the court finally concluded that there was an enforceable contract and privity existed between the parties based on U.S. Steel's representations in its products literature. *Id.*

Midwest and Home argue that the Wisconsin Court of Appeals' decision in *Hap's Aerial Enterprise v. General Aviation Corp.*, 173 Wis.2d 459, 496 N.W.2d 680 (Ct.App.1992), governs this case. In *Hap's*, the purchaser of a used aircraft brought an action against a maintenance facility that performed an inspection of the aircraft's engines for the previous owner, Regal, prior to sale. When the purchaser attempted to resell the aircraft, it had an inspection performed which revealed that the maintenance facility negligently performed its presale inspection for Regal, and that the engine needed repairs. There was no contract or warranty between the purchaser and the maintenance facility. The trial court dismissed the complaint as being precluded by the economic loss doctrine. The court of appeals reversed because, although the purchaser could have taken measures to protect itself from sustaining economic loss, the present state of Wisconsin law does not prevent a purchaser from recovering economic damages caused by the negligence of a third party, where there is neither a contract nor a warranty. *Id.* 496 N.W.2d at 683.

In *Hap's*, the court of appeals noted that whether the economic loss doctrine applies in the absence of privity between the parties is an unresolved issue in Wisconsin. As Midwest and Home correctly point out, the court's statements may cast doubt on Judge Posner's opinion in *Miller*, which concludes that the Wisconsin Supreme Court would apply the economic loss doctrine even in cases where there was no contractual relationship between the parties. Contrary to what Sikorsky asserts in its brief, *Miller* does not provide the "only definitive answer." In fact, the Wisconsin Court of Appeals stated that, in its view, the Wisconsin Supreme Court is unlikely to approve the *Miller* court's application of the economic loss doctrine. *Hap's*, 173 Wis.2d at 463, 496 N.W.2d 680. The court in *Hap's* criticized the Seventh Circuit's broad conclusion in *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1300 (7th Cir.1991) (citing *Miller*, 902 F.2d at 574–75), that "there is now substantial evidence that Wisconsin would decline in all circumstances to allow a negligence suit for the recovery of only economic damages, even when there is no contractual relationship between the parties." The Wis-

consin Court of Appeals stated that the Wisconsin Supreme Court has not yet declared *Miller* and *Midwest Knitting* to be the law of this state, and "we think that when presented squarely with the question, it will not." *Hap's*, 173 Wis.2d at 463 n. 4, 496 N.W.2d 680.

A careful reading of the *Hap's* case indicates that the court was primarily concerned with the breadth of the Seventh Circuit's statement. *Midwest Knitting* involved a tort claim by a third party against an employer arising out of the negligent supervision of an employee. The Court of Appeals for the Seventh Circuit held that Wisconsin would recognize the claim, but would not permit recovery of purely economic losses for the tort. *Midwest Knitting*, 950 F.2d at 1300. As stated previously, the *Hap's* court held that Wisconsin law does not prevent a purchaser from recovering economic damages caused by the negligence of a third party. In *Hap's*, the court noted that the Wisconsin Supreme Court has twice held that a defendant who negligently provides services to one person may be liable for economic losses suffered by a third person, unless public policy dictates otherwise. 173 Wis.2d at 465, 496 N.W.2d 680. But those cases, *Hap's*, and *Midwest Knitting* all involve negligent services or acts, not products. In my view, the *Hap's* court's criticism of *Miller* and *Midwest Knitting* primarily concerned the breadth of the statement that "Wisconsin would decline *in all circumstances* to allow a negligence suit for the recovery of only economic damages." *Midwest Knitting*, 950 F.2d at 1300 (emphasis added). The Wisconsin Court of Appeals did not directly address the privity requirement in a products liability situation, nor did the Wisconsin Supreme Court in *Northridge*. Moreover, in *Northridge* the Wisconsin Supreme Court had an opportunity to criticize *Miller* directly, but it did not. Accordingly, these statements do not change my conclusion that a Wisconsin court would apply the economic loss doctrine even though Midwest was a remote purchaser.

▆ The policies underlying remedies in tort and contract further support my conclusion that the economic loss doctrine applies even in the absence of privity between the parties, particularly in a products liability case like this. In tort law, foreseeability generally dictates liability. In products liability law, however, foreseeability is "an inadequate brake" because there is a duty to the public generally. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874, 106 S.Ct. 2295, 2304, 90 L.Ed.2d 865 (1986). Manufacturers would potentially be liable for enormous damage awards if recovery for all foreseeable claims for purely economic loss were permitted. *Id.* Accordingly, the United States Supreme Court determined that economic loss is the core concern of contract law, and public policy concerns regarding dangerous products do not require the extension of tort law to permit recovery for solely economic loss; "[t]he law does not spread its protection so far." *Id.* at 874, 106 S.Ct. at 2304 (quoting *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927).[1]

Midwest urges me to extend the scope of products liability law in Wisconsin beyond what the legislature and the Supreme Court of Wisconsin have allowed. I see no good reason why, in the absence of damage to other property, a remote purchaser like Midwest should be allowed to proceed with its tort claims, when a party in privity would be precluded from recovery. Allowing these claims to proceed would expose manufacturers to a broader range of liability. Because Wisconsin has not acted through its legislature or courts to clarify the question of privity, I conclude that recovery of economic losses for a defective product are not available in tort.

▆ All this said, I must next decide whether Midwest's claims fall under the exception to the economic loss doctrine which permits recovery for damage to other property. Wisconsin law is clearer on this issue: it does not permit recovery in tort where the plaintiff does not suffer harm to person or property other than the allegedly defective product itself. Applying this rule to the case before me, Midwest cannot proceed on its

1. Although *East River* was an admiralty case, the policies articulated are no less relevant.

672

claims of negligence and strict liability unless its complaint includes damage to other property. In my opinion, the economic loss doctrine as applied by Wisconsin courts precludes recovery in tort for the type of damages that Midwest seeks in this case.

Midwest argues that its loss is not merely economic loss but includes loss to other property—the helicopter. Midwest contends that this case is analogous to *Spychalla* and *Northridge*. It alleges that the defective tail rotor drive system caused physical harm to the helicopter, which is property other than the tail rotor drive system. Along a similar line, Home argues that its claim involves damage to other property, including costs for cleaning fuel and oil at the accident site, examination of the parking garage roof, investigation, claims handling, and adjusting services. I fail to see how these costs constitute "other property."

Rather than *Spychalla* or *Northridge*, a more analogous case is *Midwhey*. In *Midwhey*, the court of appeals found that the allegedly defective turbines were connected to the steam generators as an integral part of a total energy savings system purchased by the plaintiff. 157 Wis.2d at 590, 460 N.W.2d 426. The court concluded as a matter of law that "because of the integral relationship between these two pieces of machinery, component parts of a single system, the turbines are not 'other property,' and, therefore, damage to the turbine does not permit a tort claim against the manufacturer of the generator." *Id.* at 591, 460 N.W.2d 426.

■ Like *Midwhey*, this case involves a single piece of machinery with component parts. Although Midwest now contends that the defective tail rotor drive system was separate property, I do not find that argument persuasive. This is especially true given that Midwest's tort claims concern both the tail rotor drive system and the helicopter. Sikorsky provided the whole helicopter. The helicopter functions as an integral system. Moreover, in *Midwhey*, the court held that the turbines ceased to be separate property even though they had been manufactured by another company. In this case, there are no allegations that Sikorsky provided only the tail rotor drive system. Even if it had, fol-

lowing *Midwhey*'s "integral system" test, I would still find that the tail rotor drive system was not "other property."

Policy reasons also support using an "integral system" test. It promotes certainty and allows courts to more readily determine what constitutes "other property." The United States Supreme Court used a similar test in an admiralty case, *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986). *East River* involved a claim for damages caused by defective turbine components. The Court found that each turbine was an integrated, single unit. Moreover, it reasoned that "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." *Id.* (quoting *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324, 330 (Alaska 1981)).

■ Finally, in its brief, Home refers to unresolved claims for damage to the air conditioning unit and parking garage roof. These third-party claims do not, as Home asserts, bring Home's and Midwest's claims within the other property exception to the economic loss doctrine. These parties may have suffered damage to their property, but they are not parties to this lawsuit, and their damages do not entitle Home and Midwest to maintain tort claims for their economic losses.

Accordingly, Sikorsky's motion for summary judgment dismissing the claims against it is GRANTED.

SO ORDERED.