959 F.2d 868
 60 USLW 2636, 73 Ed. Law Rep. 936,
Prod.Liab.Rep. (CCH) P 13,139
 ADAMS-ARAPAHOE SCHOOL DISTRICT NO. 28-J, Plaintiff-Appellee,
v.
GAF CORPORATION, Defendant-Appellant,
United States Gypsum Company; Armstrong World Industries,
Inc.; Flintkote Company; Ryder Industries, Defendants.
 No. 91-1058.
 United States Court of Appeals,
Tenth Circuit.
 March 23, 1992.
 
 Richard M. Foster (Todd Jansen of Cockrell, Quinn & Creighton, Denver, Colo., Marc Weingarten and Jonathan Miller of Greitzer and Locks, Philadelphia, Pa., with him on the briefs), of Cockrell, Quinn & Creighton, Denver, Colo., for plaintiff-appellee.
 John C. Siegesmund III (James D. Hinga and Andrew B. Prosser of Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, Colo., Shauna L. Hilgers of Law Firm of Mike Hilgers, Arvada, Colo., Michael L. Hardy, Theodore E. Laszlo, Jr. and Gary M. Glass of Thompson, Hine and Flory, Cleveland, Ohio, with him on the briefs), of Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, Colo., for defendant-appellant.
 Before LOGAN and BRORBY, Circuit Judges, and DAUGHERTY,* District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 Defendant GAF Corporation (GAF), a former manufacturer of vinyl asbestos floor tile, appeals from a jury verdict in favor of Plaintiff Adams-Arapahoe School District No. 28-J (School District). Because we conclude the School District had only one legally compensable claim, and because we conclude the School District failed to provide sufficient evidence of physical injury to justify sending that claim to the jury, we reverse and remand with instructions for the district court to enter a directed verdict in favor of GAF.
 
 I. BACKGROUND
 
 2
 "Asbestos-in-buildings" cases have been litigated for over a decade. This case is somewhat unusual, however, as it represents the first in which the plaintiff sought recovery for alleged property damage caused by vinyl asbestos floor tile (VAT). VAT is a resilient floor covering that was widely used, both commercially and residentially, from the 1950's into the 1980's. Because of its durable wear characteristics and affordable price, VAT was typically specified as the floor covering of choice for schools. Today, however, asbestos building products are no longer used due to the health dangers associated with exposure to respirable asbestos fibers.
 
 
 3
 Respirable asbestos fibers may be released from "friable" asbestos-containing materials when such materials are disturbed. A "friable" asbestos material is one that, "when dry, may be crumbled, pulverized, or reduced to powder by hand pressure, and includes previously nonfriable material after such previously nonfriable material becomes damaged to the extent that when dry it may be crumbled, pulverized, or reduced to powder by hand pressure." 40 C.F.R. § 763.83 (1990); see also Colo.Rev.Stat. § 25-7-502(6) (1990). In-place, properly maintained VAT does not readily fit this definition; therefore, VAT has not previously been the target of this type litigation.
 
 
 4
 The School District commenced this action in 1984 to recover the cost of removing asbestos-containing building products from Aurora, Colorado, public schools.[1] In its complaint, the School District named several former asbestos product manufacturers as defendants, and asserted various tort and contract causes of action. The trial was ultimately trifurcated on the basis of product groups. This appeal derives from Phase III of that trial, which involved only those claims against VAT manufacturers.[2] Phase III was submitted to the jury on the School District's negligence and strict products liability claims.[3] However, the jury returned a verdict against GAF[4] on the negligence claim alone. Our review is therefore limited to the validity of that claim.
 
 II. DISCUSSION
 
 5
 Although GAF has presented six issues for consideration on appeal, we need only address one: Did the School District suffer an injury cognizable in tort?
 
 
 6
 A federal court sitting in diversity on this issue must "ascertain and apply Colorado law [with the objective] that the result obtained in the federal court [should be] the result that would [be] reached ... in a Colorado court." Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73, 58 S.Ct. 817, 819-820, 82 L.Ed. 1188 (1938). In the absence of authoritative precedent from Colorado's highest court, and predict how the Colorado Supreme Court would rule. Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir.1984). We review this state-law determination de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991).
 
 
 7
 The School District identifies three distinct injuries allegedly caused by GAF VAT: 1) injury in the mere presence of VAT; 2) injury in the nature of the risk inherent in VAT; and 3) injury in the nature of contamination caused by past releases of asbestos fibers from VAT. While the School District integrates these injuries into a single assertion of damages, the better analysis requires us to examine each injury separately to determine whether it is an injury for which damages are recoverable under Colorado tort law and, if so, whether the School District presented sufficient evidence to overcome GAF's motion for a directed verdict.
 
 A.
 
 8
 The School District asserts that "[t]he mere presence of VAT in [its] buildings damages those buildings because it requires the School District to incur additional costs in conducting renovations in the vicinity of the VAT where the renovation might cause the VAT to become friable." The School District cites Hiigel v. General Motors Corp., 190 Colo. 57, 544 P.2d 983 (1975), as controlling precedent.
 
 
 9
 The plaintiff-purchaser in Hiigel sued a motor home manufacturer after a defective wheel attachment system caused the wheels to detach from and thereby damage the plaintiff's motor home. The plaintiff claimed no personal injury or property damage other than that sustained by the motor home itself. The Colorado Supreme Court upheld the plaintiff's tort action, extending the doctrine of strict liability to situations where only the defective product is injured.[5] The Colorado Supreme Court was careful, however, to expressly limit the application of strict liability to physical harm to person or property, thereby declining to extend the doctrine to commercial or business loss. Id. 544 P.2d at 989 (quoting the Restatement (Second) of Torts § 402A and citing Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965)).
 
 
 10
 Likewise, negligence is not actionable in Colorado unless it results in physical damage to persons or property. See Jardel Enters., Inc. v. Triconsultants, Inc., 770 P.2d 1301, 1304 (Colo.App.1988) (economic loss rule "does not prevent a negligence action to recover for physical injury to property or persons") (emphasis added); Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc., 739 P.2d 239, 242 (Colo.1987) (injury characterized by "actual loss or damage resulting to the interests of the plaintiff" is an essential element of a negligence action; citing W. Keeton, Prosser and Keeton on Torts § 30, at 164-65 (5th ed. 1984)). The dispositive issue here therefore becomes whether the mere presence of VAT satisfies this physical harm requirement.
 
 
 11
 The School District asserts this is not a typical "loss of the bargain case"[6] and therefore cannot be characterized as a claim for economic (commercial or business) loss. From this assertion the School District apparently presumes the presence of asbestos fibers in tile manufactured to contain asbestos constitutes physical harm to the tile itself--a compensable injury under Hiigel. We cannot accept this presumption of physical harm.
 
 
 12
 When reinforcing the physical harm requirement in Hiigel, the Colorado Supreme Court relied on the seminal case of Seely v. White Motor Co., which distinguished physical injury and economic loss for purposes of strict liability and negligence actions. This distinction, observed the California Supreme Court, "is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury." Seely, 45 Cal.Rptr. at 23, 403 P.2d at 151. Rather, the distinction drawn between tort recovery for physical injuries and warranty recovery for economic loss rests on
 
 
 13
 an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.
 
 
 14
 Id. Applying the Seely distinction to facts analogous to this case, the district court in Arizona v. Cook Paint & Varnish Co., 391 F.Supp. 962, 971-72 (D.Ariz.1975), aff'd 541 F.2d 226 (9th Cir.1976), held the costs of removing a highly flammable insulation product and the resulting loss in the building's value were economic in character and did not result from negligent or accidental physical injury to the building or to the occupants.
 
 
 15
 The School District's claim of injury in the mere presence of VAT appears to be little more than an invitation to recognize some fictional property damage as a vehicle upon which to carry an economic loss action into the province of tort law. While the presence of asbestos in VAT may well impose increased renovation costs, any additional expense is best characterized as economic loss--consequential damages resulting from the failure of VAT to meet the School District's economic expectations in terms of performance. These additional costs do not represent the type of accidental physical injury against which the doctrine of negligence, as described in Seely and its progeny, is designed to protect. We therefore hold that damage by virtue of the mere presence of VAT is not recoverable under Colorado tort law.
 
 B.
 
 16
 The School District next asserts injury in the nature of risk inherent in VAT. Again, the School District relies on Hiigel v. General Motors Corp. as controlling precedent.
 
 
 17
 We find nothing in Hiigel or any other Colorado decision which supports the notion that tort liability may be premised on the mere risk of harm. As discussed above, actual physical injury is an essential element of any negligence claim. Pete's Satire, 739 P.2d at 242; see also W. Keeton, Prosser and Keeton on Torts § 30, at 164-65 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough."). Hiigel does nothing more than reinforce this well-settled requirement. 544 P.2d at 989. This basic tort principle makes clear that damages may not be awarded for injuries not yet suffered.
 
 
 18
 Importantly, the "asbestos in buildings" cases cited by both parties adhere to this same principle. Tort actions can be maintained only where plaintiffs explicitly allege and subsequent evidence demonstrates contamination of the building or other property as a result of fibers released from asbestos products. In other words, only asbestos contamination constitutes a physical injury compensable under tort law. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 976-78 (4th Cir.1987) (the release of toxic fibers from an asbestos-containing fireproofing product rendered the manufacturer liable for damages to the property owner under South Carolina tort law); 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., No. CV 87-6048-WMB, 1989 WL 260222 at *4-8 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a potential risk of harm are invalid); Catasauqua Area School District v. Eagle-Picher Indus., Inc., No. 85-3743, 1988 WL 102689 at *2-3 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); City of Manchester v. National Gypsum Co., 637 F.Supp. 646, 651-52 (D. R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law); Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., No. 84-AR-5435-NW, 1986 WL 69060 at *5-6 (N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege actual, present harm, i.e. contamination); Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged contamination and contamination constitutes a physical injury cognizable under tort); Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390, 393, 396 S.E.2d 369, 371 (1990) (judgment against manufacturer of asbestos-containing ceiling materials on negligence claim upheld where plaintiff alleged and proved damage to other property); Banc One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814, 461 N.W.2d 448 (1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff failed to allege actual physical harm); Board of Educ. of City of Chicago v. A, C & S, Inc., 131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989) ("dangerousness which creates a risk of harm is insufficient standing alone to award damages in ... negligence; however, allegations of asbestos release are sufficient to defeat a motion to dismiss"); School Dist. of City of Independence v. U.S. Gypsum Co., 750 S.W.2d 442, 456 (Mo.App.1988) (jury verdict upheld where school district provided evidence of contamination caused by defendant's asbestos-containing acoustical ceiling plaster).
 
 
 19
 Applying established Colorado law together with the consonant rationale of other jurisdictions in analogous cases, we hold the School District's claim based on risk of potential future harm is not cognizable in the present action.
 
 C.
 
 20
 Finally, we examine the School District's claim of injury in the nature of contamination caused by past releases of asbestos fibers from VAT. As discussed above, most if not all jurisdictions deciding "asbestos in buildings" cases have ruled contamination constitutes physical injury compensable in tort. We believe the Colorado Supreme Court would follow suit and would sustain the School District's negligence claim insofar as it asserted damages resulting from asbestos contamination caused by GAF VAT.
 
 
 21
 We must next determine whether the School District presented sufficient evidence to overcome GAF's motion for a directed verdict on this claim. "We review a ruling on a motion for directed verdict de novo." Hill v. Goodyear Tire & Rubber, Inc., 918 F.2d 877, 880 (10th Cir.1990). In this context we view the evidence and all inferences to be drawn therefrom in the light most favorable to the plaintiff. Id. A directed verdict is warranted only when the evidence and inferences are so clear that reasonable jurors could not differ as to the conclusion. Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1380 (10th Cir.1989). Therefore, the essential inquiry is "whether the evidence is sufficient to create an issue for the jury." J.I. Case Credit Corp. v. Crites, 851 F.2d 309, 311 (10th Cir.1988). Although a "verdict may not be directed unless the evidence points all one way and is susceptible of no reasonable inferences that would sustain the position of the party against whom the motion is made," a "scintilla of evidence is not sufficient to justify submitting a case to the jury." Richards v. Attorneys' Title Guar. Fund, Inc., 866 F.2d 1570, 1574 (10th Cir.), cert. denied, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989).
 
 
 22
 The School District presented the following evidence: One expert witness, Dr. Spero, testified as to the results of controlled experiments in which asbestos contamination was measured after five inch square floor tiles were broken into approximately ten pieces or were sanded to produce a fine powder. Some of the results were positive (asbestos fibers were detected) and some were negative (no asbestos release detected). Nevertheless, Dr. Spero opined from these experiments that VAT released asbestos fibers during breakage and sanding. Upon cross examination, however, Dr. Spero testified he had obtained several floor tile samples but had never verified the use of VAT in his experiments.
 
 
 23
 Another expert witness, Mr. Jenkins, testified as to the microscopic analysis of air samples taken from an Iowa school building following the removal of VAT in 1984. This analysis indicated that asbestos fibers are released during a normal removal operation; however, Mr. Jenkins acknowledged that the extent and magnitude of fibers can be disputed depending on the removal techniques used. Speaking only in generalities, Mr. Jenkins did not indicate which removal method(s) were used in his experiment or whether the levels of contamination were in the unacceptable range. In addition, no similarity between the VAT tested by Mr. Jenkins and the VAT present in Aurora schools was established.
 
 
 24
 The School District did present evidence that VAT had been cut and drilled over the normal course of building maintenance. However, there was no evidence of breaking or sanding, and no air or surface analyses demonstrating contamination. Furthermore, the School District has never removed VAT for purposes of contamination avoidance; VAT is removed only when it is damaged or in conjunction with a renovation project. Notably, all tile removal operations after 1984 have employed containment precautions so as to prevent any possible contamination. Contractors take these safety precautions on the presumption that removal will render VAT friable.
 
 
 25
 We find this evidence together with all reasonable inferences, even if construed in the light most favorable to the School District, supports only one conclusion: GAF VAT may have been subject to forces which may have caused a release of asbestos fibers which may have contaminated Aurora public schools. The School District, as Plaintiff, bore the burden of proving contamination by a preponderance of the evidence. See Colo.Rev.Stat. § 13-25-127 (1987 Repl.Vol.). "Evidence of a mere possibility that a condition may have existed is not sufficient to support a verdict." Peterson v. Grattan, 195 Colo. 393, 398, 578 P.2d 1063, 1067 (1978). Therefore, the evidence of contamination presented by the School District was insufficient to send the negligence claim to the jury. A directed verdict in favor of Defendant GAF was warranted.
 
 III. CONCLUSION
 
 26
 We recognize the difficult position of Adams-Arapahoe School District No. 28-J; however, after careful examination of Colorado law and of the record before us, we conclude only one valid tort claim exists--the School District's claim of injury in the nature of asbestos contamination caused by VAT. Furthermore, we conclude the School District failed to produce sufficient evidence of contamination to justify sending that claim to the jury. We therefore REVERSE and REMAND with instructions for the district court to enter a directed verdict in favor of GAF.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 The district court exercised its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We now assert appellate jurisdiction pursuant to 28 U.S.C. § 1291
 
 
 [2]
 Phase I involved claims against pipe and boiler insulation manufacturers, and Phase II addressed claims against sprayed-on acoustic insulation and ceiling product manufacturers. Defendant-manufacturers in Phase II have also appealed. (See Adams-Arapahoe School District No. 28-J v. United States Gypsum Co., 958 F.2d 381 10th Cir. 1992.)
 
 
 [3]
 The School District proceeded to trial on only three of its original claims: negligence, strict products liability and breach of implied warranties. The district court granted a directed verdict against the School District as to its implied warranty claim
 
 
 [4]
 GAF is the only Phase III defendant remaining on appeal
 
 
 [5]
 The United States Supreme Court subsequently reached the opposite conclusion. East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). However, we need not delve into the merits of these two cases because the precise issue addressed, as well as the factual circumstances, are inapposite to the present situation
 
 
 [6]
 See Aetna Cas. & Sur. Co. v. Crissy Fowler Lumber Co., 687 P.2d 514, 517 (Colo.App.1984) (interpreting Hiigel as limiting damages to physical harm caused to property and then defining "commercial or business losses" as "lost profits or loss of the benefit of a bargain") (emphasis added)