**TIOGA PUBLIC SCHOOL DISTRICT # 15 OF WILLIAMS COUNTY, STATE OF NORTH DAKOTA, Appellee,**

v.

**UNITED STATES GYPSUM COMPANY, Appellant.**

No. 90–5447.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Jan. 28, 1993.

Rehearing Denied March 11, 1993.

Kell M. Damsgaard, Philadelphia, PA, argued (Wickham Corwin, Fargo, ND, on the brief), for appellant.

Daniel A. Speights, Hampton, SC, argued (Jon M. Arnston, Fargo, ND, Steven C. Lian, Minot, ND and J. Martin Harvey, Jr., Hampton, SC, on the brief), for appellee.

Before BOWMAN, WOLLMAN, Circuit Judges, and LARSON,* Senior District Judge.

BOWMAN, Circuit Judge.

United States Gypsum Co. (USG) appeals from a final judgment entered in the District Court upon a jury verdict in favor of Tioga Public School District No. 15 (Tioga). For the reasons set forth below, we reverse the judgment of the District Court and remand the case for a new trial.

I.

During the 1950s and 1960s, USG manufactured an acoustical plaster known as Audicote that contained asbestos. Tioga constructed two of the three schools that it currently operates between 1957 and 1961. Tioga specified that plaster be used on the ceilings of the two schools, and the architect in charge of the construction selected Audicote from the various acoustical plasters available. Some of the acoustical plasters available at that time contained asbestos although others did not. Tioga does not appear to have known that the architect selected Audicote, or that Audicote contained asbestos. Tioga paid approximately $1,600.00 for the Audicote.

In the early 1980s, the Environmental Protection Agency (EPA) sent schools notices requiring them to identify asbestos-containing materials in the schools and warning them of the potential risks associated with asbestos. The Audicote ceilings were still in place in the two Tioga schools, although certain portions of the plaster had crumbled and there were a number of spots where contact with the ceilings had gouged the plaster. Following receipt of the EPA notices, Tioga determined that the plaster contained asbestos and that it was friable. A friable material is one that, "when dry,

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

may be crumbled, pulverized, or reduced to powder by hand pressure." 40 C.F.R. § 763.83 (1992). Friable asbestos-containing materials are of particular concern because asbestos fibers may be released from such materials.

Upon discovering that the ceilings in the two schools contained asbestos and that the plaster was friable, Tioga spent approximately $15,000.00 "encapsulating" the Audicote. Essentially, this involved painting the ceilings with latex paint to prevent the release of asbestos fibers from the plaster. Tioga introduced evidence at trial that it encapsulated the Audicote as an interim measure, since it lacks the funds to pay for removal of the asbestos.

Removal of asbestos-containing materials is extremely costly because of the complicated procedures that must be followed to avoid contamination of the building from which the materials are being removed and to prevent the removal workers from being exposed to asbestos fibers. USG's evidence at trial tended to show that the cost of removal would be in the neighborhood of $400,000.00, while Tioga's evidence suggested a cost of approximately $1,100,-000.00. Although current regulations do not require immediate removal of asbestos-containing materials in schools, they do require that such materials be removed when a building is renovated or demolished. 40 C.F.R. § 61.145 (1992).

Encapsulation of the Audicote ceilings has not completely contained the asbestos. Tioga introduced evidence that tended to show that the Audicote remained friable, that contact with encapsulated ceilings can result in the release of asbestos fibers, and that in some instances fissures had developed in the latex paint and in other instances the encapsulant had been punctured to repair leaks or by accident. Tioga also introduced evidence that dust samples collected in the schools a number of years after the encapsulation was completed contained higher than background levels of asbestos and that this asbestos had come from the Audicote ceilings. Finally, although the issue was hotly disputed, Tioga presented evidence that even low level exposure to asbestos presents health risks.

## II.

Tioga originally brought this suit in North Dakota state court seeking to recover the cost of removing the Audicote. Tioga asserted theories of negligence, strict liability, fraud and misrepresentation, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, nuisance, restitution, and indemnity. USG removed the case to the District Court pursuant to 28 U.S.C. § 1441(a) (1988).

USG moved for a directed verdict at the close of plaintiff's case and again at the close of all evidence. The District Court dismissed several of Tioga's claims, and submitted the case to the jury on five theories: negligence, strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and nuisance. The District Court denied USG's request to submit special verdict forms to the jury. The jury returned a general verdict for Tioga and awarded Tioga compensatory damages in the amount of $756,906.22. After the parties were given an opportunity to introduce additional evidence on the issue of punitive damages, the jury also awarded Tioga punitive damages of $75,000.00.

USG moved for a judgment notwithstanding the verdict or for a new trial. The District Court denied the motion. On appeal, USG argues that the District Court erred in: 1) allowing Tioga to recover in tort for economic loss; 2) submitting to the jury Tioga's nuisance claim; 3) improperly charging the jury with respect to Tioga's implied warranty claims; 4) refusing to charge the jury regarding USG's state-of-the-art defense and excluding evidence relevant to that defense; and 5) improperly charging the jury regarding punitive damages.[1] As a federal court sitting in diversi-

1. In addition to these assertions of error, USG originally argued that Tioga's claims were barred by North Dakota's statute of limitations, N.D.Cent.Code § 28-01-16 (Supp.1989), and by

ty, this Court applies state substantive law, *American Home Assurance Co. v. Major Tool & Mach., Inc.*, 767 F.2d 446, 447 (8th Cir.1985), in this case, the law of North Dakota. This Court reviews de novo the trial court's determinations of North Dakota law. *Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

### III.

USG first argues that the economic loss doctrine bars Tioga from recovering the damages it seeks in tort. The economic loss doctrine was adopted by the North Dakota Supreme Court in *Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591 (N.D.1984). The scope of the doctrine, and the logic underlying it are set out in the landmark case of *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), which was cited approvingly in *Hagert*, and in cases such as *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (holding that the economic loss doctrine applies in admiralty cases), and *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir.1990).

■ The premise of the economic loss doctrine is that, although tort law is an appropriate vehicle for providing a recovery for physical injury to persons or to other property caused by defective goods, tort law should not be held to undermine the law of sales' balancing of the relationship between buyers and sellers regarding whether or not, and how well, products work. Recovery in tort is allowed for physical injuries caused by defective products because such injuries are unexpected and can be overwhelming to consumers, and because the risk of such injuries is best insured and distributed by manufacturers. The risk of losses not attributable to physical injury to persons or to other property, however, is better contractually allocated

between sellers and particular purchasers through bargaining for desired warranties. Thus, purchasers may not recover in tort when defective products cause purely economic loss. *Seely*, 45 Cal.Rptr. 17, 403 P.2d 145.

■ Although the North Dakota Supreme Court has adopted the economic loss doctrine, we do not believe that that court would hold that the doctrine precludes Tioga from recovering in this case. The asserted injury here is the presence of Audicote in Tioga's schools and the contamination of the schools by asbestos. The asbestos poses a risk of devastating injury to those whose health may ultimately be harmed by it, a risk best distributed by the seller or manufacturer. Moreover, the presence of asbestos in Audicote and the resulting danger have nothing to do with the level of performance of the product. In fact, the evidence suggests that the Audicote, although encapsulated, is still functioning well as acoustical plaster. *Cf. Miller*, 902 F.2d 573 (economic loss doctrine bars recovery in tort for the cost of replacing steel walls that were supposed to be rust resistant but that rusted through).

USG calls to our attention the recent decision of the North Dakota Supreme Court in *Cooperative Power Ass'n v. Westinghouse Electric Corp.*, 493 N.W.2d 661 (N.D.1992). In that case the court held that the economic loss doctrine bars recovery in tort for damages which a defective part of a product causes to the rest of the product. That decision, however, does not control the present case. The asserted injury here is not simply an injury to the Audicote or to the school buildings; rather, the injury is the contamination of the Tioga school buildings by asbestos and the consequent health risk to the buildings' occupants. USG should not be allowed to escape liability by arguing that its product is merely a component of a larger product and that any damages are to the school buildings.

a North Dakota statute of repose, N.D.Cent.Code § 28–01–44 (Supp.1989). Counsel for USG conceded at oral argument that these issues are controlled by the subsequent decision of the North Dakota Supreme Court in *Hebron Public*

*School District No. 13 v. United States Gypsum Co.*, 475 N.W.2d 120 (N.D.1991), and that, under that decision, Tioga's claims are not barred by these statutes.

Nor should the fact that none of the buildings' occupants has yet been shown to have a health problem attributable to asbestos serve as a bar to recovery. To reduce health risks associated with asbestos, the EPA has prescribed expensive removal procedures that must be followed when regulated asbestos-containing materials are removed from buildings and has mandated that such materials be removed from buildings when those buildings are renovated or demolished. Were any occupants of the Tioga school buildings to become ill as a result of their exposure to asbestos, those persons would presumably be entitled to recover from USG. Tioga should be no less able to recover the costs of removing the plaster in a safe manner consistent with EPA regulations designed to prevent such health risks.

That the overwhelming majority of courts deciding the issue under the law of other states have held that the economic loss doctrine does not bar tort recovery for the cost of removing asbestos-containing building materials supports our conclusion that the North Dakota Supreme Court would not find that the economic loss doctrine bars tort recovery in this case. In *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir.1987), the Fourth Circuit was presented with an asbestos-in-building case arising under South Carolina law. The Fourth Circuit held that South Carolina courts probably would not find that a suit for the cost of removing an asbestos-containing plaster was barred by the economic loss doctrine. The court pointed out that the injury at issue was the contamination of Greenville's city hall, which endangered the lives and health of the building's occupants, and that, unlike typical economic loss, this was not the type of risk normally allocated between parties by agreement. *See also, e.g., Detroit Bd. of Educ. v. Celotex Corp.*, 196 Mich.App. 694, 703–04, 493 N.W.2d 513, 518 (1992) (holding under Michigan law that because asbestos products may contaminate buildings rendering them unfit for occupation, the economic loss doctrine does not apply to claims to recover the cost of abatement); *Board of Educ. v. A, C & S, Inc.*, 131 Ill.2d

428, 137 Ill.Dec. 635, 640–46, 546 N.E.2d 580, 585–91 (1989) (holding that under Illinois law the economic loss doctrine does not bar recovery on an asbestos-in-building claim when the asbestos has contaminated the buildings thus damaging other property).

The only reported decision of which we are aware that bars recovery in tort for the costs of asbestos abatement is the recent decision of the Tenth Circuit in *Adams–Arapahoe School District No. 28–J v. GAF Corp.*, 959 F.2d 868 (10th Cir.1992). In that case, the Tenth Circuit held that the Colorado Supreme Court probably would find that any increase in renovation costs required to comply with the EPA's regulations was best characterized as an economic loss resulting from the failure of the product at issue to meet the school district's economic expectations in terms of performance. *Id.* at 871–72. The facts in the *Adams–Arapahoe* case, however, differ from those in the present case in an important respect: in *Adams–Arapahoe* the school district did not show that there had been any release of asbestos from the asbestos-containing materials (nonfriable tiles) in its schools so as to result in the contamination of the schools. *Id.* at 874. By contrast, Tioga has shown that the Audicote in its schools is friable and that it has released asbestos; that Tioga has undertaken an encapsulation and maintenance program to contain the Audicote; and that even encapsulation has not completely contained the asbestos hazard resulting from the Audicote.

In sum, Tioga is not seeking to recover the lost benefit of its bargain based on a claim that the plaster is deficient as acoustical plaster; such a claim would clearly be barred by the economic loss doctrine. Instead, Tioga is seeking to recover the cost of removing the asbestos-containing plaster from its schools on the ground that the asbestos poses a risk of injury to those exposed to it. We believe the North Dakota Supreme Court would find this case distinguishable on its facts from the *Adams–Arapahoe* case, and would in any case follow the strong majority of reported cases

in holding that the economic loss doctrine does not bar Tioga's recovery in tort. We therefore reject USG's argument to the contrary.

## IV.

■ USG next argues that Tioga's nuisance claim was improperly submitted to the jury. Tioga's nuisance claim was based on North Dakota's nuisance statute, which provides:

A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

2. Offends decency;

3. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake, navigable river, bay, stream, canal, basin, public park, square, street, or highway; or

4. In any way renders other persons insecure in life or in the use of property.

N.D.Cent.Code § 42–01–01 (1983). The trial court's instruction to the jury on this claim was a verbatim statement of subsections 1. and 4. of the statute.

It has been stated that there is "perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all people." W. Keeton, *Prosser and Keeton on Torts* § 86, at 616 (5th ed. 1984). One issue on which the courts appear to agree, however, is that nuisance law does not afford a remedy against the manufacturer of an asbestos-containing product to an owner whose building has been contaminated by asbestos following the installation of that product in the building. All of the courts that have considered the issue have rejected nuisance as a theory of recovery in such cases. *City of Manchester v. National Gypsum Co.*, 637 F.Supp. 646, 656 (D.R.I.1986); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126, 133 (D.N.H.1984); *County of Johnson v. United States Gypsum Co.*, 580 F.Supp. 284, 294 (E.D.Tenn.1984); *Detroit Bd. of Educ. v. Celotex Corp.*, 196 Mich.App. 694, 702–

03, 493 N.W.2d 513, 517–18 (Ct.App.1992). These courts have noted that liability for damage caused by a nuisance turns on whether the defendant is in control of the instrumentality alleged to constitute a nuisance, since without control a defendant cannot abate the nuisance. Each court found that a defendant who had sold an asbestos-containing material to a plaintiff lacked control of the product after the sale. *City of Manchester*, 637 F.Supp. at 656; *Town of Hooksett*, 617 F.Supp. at 133; *County of Johnson*, 580 F.Supp. at 294; *Detroit Bd. of Educ.*, 196 Mich.App. at 702–03, 493 N.W.2d 513, 517–18. We believe these decisions are well reasoned, and it seems clear to us that USG cannot be held liable to Tioga under traditional nuisance theory.

Tioga argues that, regardless of the limitations of traditional common law nuisance doctrine, North Dakota's nuisance statute is directly applicable by its terms to the facts of the present case, and that the trial judge therefore properly submitted Tioga's nuisance claim to the jury. Tioga has not presented us with any North Dakota cases extending the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance, nor has our research disclosed any such cases. North Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a landowner or other person in control of property conducting an activity on his land in such a manner as to interfere with the property rights of a neighbor. *See, e.g., City of Minot v. Freelander*, 426 N.W.2d 556 (N.D.1988) (defendant's unsanitary, odorous house held to be a nuisance). When one considers the fact that the statute is over a hundred years old, the absence of analogous cases supports an inference that the statute was neither intended nor has it been understood to extend to cases such as the present case.

In addition to the lack of case law extending North Dakota's nuisance doctrine to cases involving the sale of goods, we draw support for the idea that the statute was not intended to extend to such a situation from a recent nuisance case decided by

the North Dakota Supreme Court. In *Jerry Harmon Motors v. Farmers Union Grain Terminal Ass'n*, 337 N.W.2d 427 (N.D.1983), the court applied the coming-to-the-nuisance defense in a nuisance case, although the defense is nowhere mentioned in the statute. This suggests that the court does not believe that the common law nuisance doctrine has been wholly changed and replaced by the nuisance statute. In addition, the North Dakota Supreme Court, speaking much closer in time to the year when the state's nuisance statute was enacted, has stated that statutory provisions are "but a continuation of the common law to be construed therewith." *Reeves & Co. v. Russell*, 28 N.D. 265, 148 N.W. 654, 659 (1914).

Moreover, to interpret the nuisance statute in the manner espoused by Tioga would in effect totally rewrite North Dakota tort law. Under Tioga's theory, any injury suffered in North Dakota would give rise to a cause of action under section 43–02–01 regardless of the defendant's degree of culpability or of the availability of other traditional tort law theories of recovery. Nuisance thus would become a monster that would devour in one gulp the entire law of tort, a development we cannot imagine the North Dakota legislature intended when it enacted the nuisance statute. In short, we do not believe that the North Dakota Supreme Court, under the facts of this case, would hold that Tioga has a cause of action for nuisance against USG, and we therefore hold that the trial court erred in submitting Tioga's nuisance claim to the jury.

We reject Tioga's contention that our consideration of the nuisance issue is foreclosed by the decision of this Court in *Hebron Public School District No. 13 v. U.S. Gypsum*, 953 F.2d 398, 403 (8th Cir.1992). USG points out that the nuisance issue was not raised in the briefs in *Hebron*. Moreover, our Court's statement of the issues in *Hebron*, 953 F.2d at 400, demonstrates that we did not consider this issue to have been before us for decision at that time. Similarly, our Court's summing up of its decision in the penultimate paragraph of the *Hebron* opinion, 953 F.2d at 404, further demonstrates that the Court did not decide the nuisance issue in that case. We are satisfied that the Court's indirect references in the *Hebron* opinion to the plaintiff's nuisance theory of liability, 953 F.2d at 403, will simply not bear the weight Tioga would have us give them.

■ Five of Tioga's claims were submitted to the jury, which returned a general verdict for Tioga. Because the nuisance claim was improperly submitted, the judgment rendered in favor of Tioga must be set aside and the case remanded for a new trial. *Dudley v. Dittmer*, 795 F.2d 669, 673 (8th Cir.1986) ("The rule in this circuit is clear that when one of two theories has erroneously been submitted to the jury, a general verdict cannot stand."). Tioga seeks to escape the reach of *Dudley* by arguing that this case is like *Robertson Oil Co. v. Phillips Petroleum Co.*, 871 F.2d 1368 (8th Cir.1989), in which we upheld a judgment for the plaintiff even though three of four theories on which the case had been submitted to the jury were held to be improper. In *Robertson Oil*, however, special interrogatories were submitted to the jury. The fact that improper theories were submitted to the jury did not taint the jury's verdict on the properly submitted theory, and we could know with certainty from the interrogatories that the jury had found for the plaintiff on this theory. Neither the logic underlying *Robertson Oil* nor the holding of that case support Tioga's argument, and the argument fails.

Tioga also seeks to escape the holding of *Dudley* by arguing that the jury's award of punitive damages shows that the jury must have found that USG was negligent. Tioga points out that its only fault-based theory of recovery was the negligence theory and argues that counsel for both parties characterized the negligence theory as being the only theory for which USG's conduct was relevant. Tioga argues that, because the jury must have found that USG was negligent, and because USG does not challenge the propriety of the trial court's submission of the negligence theory to the jury, the judgment appealed from should be affirmed. *See Mueller v. Hubbard*

*Milling Co.*, 573 F.2d 1029, 1039 (8th Cir.) (holding that court may affirm verdict if it is "fairly convinced" that jury proceeded on a sound basis), *cert. denied*, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978).

This argument also fails. The jury instruction on punitive damages did not restrict the jury to awarding punitive damages on Tioga's negligence theory. Authority exists for the proposition that punitive damages may be awarded in a strict liability case. *See, e.g., Ferren v. Richards Mfg. Co.*, 733 F.2d 526, 529 (8th Cir.1984) (applying Missouri law). We cannot say that, in this case, the jury, which was not expressly restricted to the negligence theory in considering the propriety of awarding punitive damages, did not award these damages on another theory such as the improperly submitted nuisance theory.

To conclude, we hold that Tioga's nuisance theory was improperly submitted to the jury and that it might have been the theory on which the jury returned its verdict for Tioga. This case falls squarely within the rule of *Dudley;* hence the judgment of the trial court must be set aside and the case remanded for a new trial. Because we are remanding, we think it may be helpful to the trial court and to the parties for us to address some of the other issues raised in this appeal that are likely to arise again in the context of a new trial. We turn now to these issues.

## V.

USG argues that the trial judge erred in improperly charging the jury with respect to Tioga's implied warranty claims. Although there seems to have been some confusion during the course of the trial, the parties agree that Tioga ultimately sought to assert its implied warranty theories in tort. In other words, because the statute of limitations barred all contractual warranty actions, Tioga asserted a claim for implied warranty of merchantability in tort, and a claim for implied warranty of fitness for a particular purpose in tort.

We are somewhat perplexed by the idea of asserting these implied warranty theories in tort, and we note that Tioga present-

ed no North Dakota authority other than an unpublished transcript of a state trial judge's ruling on a motion to dismiss a multi-count complaint to support its argument that North Dakota recognizes such implied warranty theories as causes of action in tort. Such unpublished authority may not be cited under the rules of this Court. 8th Cir.R. 28A(k). A panel of this Court, however, recently recognized the propriety of these same implied warranty theories in tort, *Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum*, 953 F.2d 398, 402 (8th Cir.1992), thus we are not free to hold that they do not exist under North Dakota law.

We note that, while the authorities cited in *Hebron* do indeed support the parallel between the strict liability in tort theory and contractual implied warranty theories, they do not go so far as to suggest that one may assert implied warranty theories in tort. Rather, they simply address the parallels between the elements of the strict liability in tort theory and the contractual implied warranty theories. *See, e.g., Herman v. General Irrigation Co.*, 247 N.W.2d 472, 476 (N.D.1976) They also point out that early in its evolution, as the courts struggled to impose liability on manufacturers of defective products, what came to be the strict liability theory was sometimes called "warranty." *See* Restatement (Second) of Torts § 402A, Comment m. In this case, Tioga asserted a strict liability claim in tort. Were Tioga's contractual implied warranty claims not barred by the statute of limitations, Tioga could also have asserted such claims. But to suggest that Tioga may also assert implied warranty theories in tort would seem to give it a third bite at the apple unwarranted by North Dakota or other precedent.

Because we have severe doubts as to whether the North Dakota Supreme Court would recognize the implied warranty of merchantability and implied warranty of fitness for a particular purpose as tort theories, we would give strong consideration to certifying the issue to the North Dakota Supreme Court if this case came

before us again on appeal. Of course, one implication of our doubts about the propriety of these implied warranty theories is that, on remand and retrial, the trial court may wish to submit the case to the jury on a special verdict form rather than a general verdict form. This would reduce the possible need for a third trial of the case should the implied warranty theories ultimately be found to be improper.

## VI.

■ USG also argues that the trial judge erred in refusing to charge the jury regarding USG's state-of-the-art defense and in excluding evidence relevant to that defense. USG sought a jury instruction under § 28–01.1–01 of the North Dakota Centennial Code, basing its claim of entitlement to the instruction on Audicote's compliance with General Services Administration (GSA) specifications, existing at the time Tioga's schools were constructed, that guided federal agencies in making procurement decisions. Section 28–01.1–01, which is part of North Dakota's Products Liability Act, provides that:

There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting, and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting, and testing the product were adopted.

N.D. Cent.Code § 28–01.1–05(3) (Supp. 1989).

We do not believe that the North Dakota Supreme Court would hold that the "government standards" referred to in this section include mere GSA specifications. If the North Dakota legislature had intended to include government specifications within the reach of the statute it could have expressly done so. *See, e.g.,* Wash.Rev.Code § 7.72.050(2) (1992) ("When the injury-causing aspect of the product was, at the time of manufacture, in compliance with a specific mandatory government contract specification relating to design or warnings, this compliance shall be an absolute defense."). "Government standards" more likely refers to standards established by statute or regulation that govern an industry. We note that the GSA specifications at issue would not even have applied to the Tioga school construction, since Tioga is not a federal agency. Because we believe that the North Dakota Supreme Court would hold that the "government standards" referred to in the statute do not include the GSA specifications, we hold that the trial judge did not err in refusing to give USG's requested jury instruction.

■ USG also argues that the trial judge erred in refusing to admit into evidence not only the GSA specifications but also a slew of other documents showing the federal government's use of asbestos in building construction at the time the Tioga school buildings were constructed. We may reverse a trial judge's rulings on the admissibility of evidence only if there is an abuse of discretion. *Northside Mercury Sales & Serv., Inc. v. Ford Motor Co.,* 871 F.2d 758, 760 (8th Cir.1989). In this case USG admits that it already had presented considerable evidence regarding the widespread use of asbestos-containing building materials during the period when the schools at issue in this case were built. The trial judge pointed this out in ruling that the excluded evidence would not show anything more and therefore would not be admitted. *See* Fed.R.Evid. 403 (evidence may be excluded when its probative value is substantially outweighed by considerations such as waste of time or needless presentation of cumulative evidence). We hold that the trial judge did not abuse his discretion in excluding the evidence in question.

## VII.

■ The last argument that USG raises concerns the punitive damages instruction given to the jury. In reviewing jury instructions, we decide whether, taken as a whole, they fairly and adequately state the

applicable law. *Circle J Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.*, 790 F.2d 694, 698–99 (8th Cir.1986). Reviewing under this standard the punitive damages instruction given at trial, we note that it closely resembles the charge given in *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 756 n. 7 (N.D.1989), and we find that it fairly and adequately states the applicable North Dakota law on punitive damages.

Because we are remanding this case for a new trial, we decline to address the arguments made by USG against the constitutionality of North Dakota's punitive damages law. We note that in *Stoner*, which was decided before the United States Supreme Court's decision in *Pacific Mutual Life Insurance Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the North Dakota Supreme Court affirmed the constitutionality of the award of punitive damages then before it. We leave it to the District Court to apply on remand the standards set forth in *Haslip*.

For the reasons stated above, we reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.

LARSON, Senior District Judge, dissenting.

I dissent to the granting of a new trial to USG on the ground that the nuisance theory was improperly submitted to the jury. After an eight day trial, the district judge submitted five theories of liability to the jury. The jury returned a general verdict in favor of Tioga, including a modest punitive damage recovery.

The district court, in an extensive and thorough memorandum and order, denied the motion of USG for judgment n.o.v. or for a new trial. The district court reviewed the North Dakota nuisance statute and concluded that Tioga's nuisance claim was properly submitted to the jury. I agree with the district judge that North Dakota broadly defines nuisance by statute and does not require the control that USG and the majority would like to engraft on the statute. The district court concluded that,

because all claims were properly submitted to the jury, a new trial was unnecessary.

I do agree with the majority opinion that, if it was error to submit the nuisance theory, there should be a new trial because the general verdict does not allow the court to determine on what theory the jury found for the plaintiff. I believe, however, that the nuisance theory was an acceptable interpretation of North Dakota law. Accordingly, I would affirm the judgment of the district court in all respects.