123 F.3d 675
 33 UCC Rep.Serv.2d 803
 COOPER POWER SYSTEMS, INCORPORATED, Plaintiff-Appellant,
v.
UNION CARBIDE CHEMICALS & PLASTICS COMPANY, INCORPORATED, a
New York corporation, Defendant-Appellee.
PREMIUM FINISHES, INCORPORATED, Plaintiff-Appellant,
v.
UNION CARBIDE CHEMICALS & PLASTICS COMPANY, INCORPORATED,
Defendant-Appellee.
 Nos. 95-3083, 95-3084.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 24, 1997.
Decided Sept. 15, 1997.
 
 J. Ric Gass (argued), Ralph A. Weber, Sandra L. Botcher, Kravit, Gass & Weber, Milwaukee, WI, for Plaintiff-Appellant Cooper Power Systems, Inc.
 Michael G. McCarty, Nancy J. Sennett, Foley & Lardner, Milwaukee, WI, Gregory A. Lalim, William C. Heck, Kevin J. Walsh (argued), Neil Merkl, Kelley, Drye & Warren, New York City, Robert A. Bunda, Bunda, Stutz & Dewitt, Toledo, OH, for Defendant-Appellee.
 Francis H. LoCoco, Mitchell S. Moser, Quarles & Brady, Milwaukee, WI, Samuel J. Najim (argued), Robert P. Ducatman, Jones, Day, Reavis & Pogue, Cleveland, OH, Leo J. Breslin, Lindhorst & Dreidame, Cincinnati, OH, for Plaintiff-Appellant Premium Finishes, Inc.
 Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Premium Finishes, Incorporated ("PFI") purchased a resin from Union Carbide Chemicals & Plastics Company, Incorporated ("Carbide") in order to manufacture a paint that PFI then sold to Cooper Power Systems, Incorporated ("Cooper"). Cooper incurred substantial costs when the paint failed after it was used to coat thousands of electrical transformers. Cooper sued PFI and Carbide to recover its costs alleging several state law theories. PFI cross-claimed against Carbide for indemnity and filed a separate action alleging its own state law theories of recovery. After the actions were consolidated, the district court granted summary judgment to Carbide and certified that judgment as final under Rule 54(b) of the Federal Rules of Civil Procedure.[1] We affirm in part, reverse in part and remand the case for further proceedings.
 
 
 2
 * BACKGROUND
 
 
 3
 We take the facts in the light most favorable to PFI and Cooper. Carbide manufactures resins that are used by producers of paints and protective coating systems such as PFI. As early as 1959, Carbide and Ron Savin, the owner of PFI, developed a working relationship. PFI would buy a large quantity of resins from Carbide on an annual basis. Carbide's technical personnel assisted PFI in developing a coating called Weathercote-T by providing start-up formulas and technical assistance. Subsequently, in 1980, Carbide introduced a new resin, VYES, to the market. Carbide promoted VYES to its customers, including Savin. It represented that VYES could be used to replace conventional vinyl resins and that the new resin was suitable for all kinds of weather. Beginning in 1982 PFI began incorporating VYES into Weathercote-T. Carbide was aware that PFI's customers used Weathercote-T to coat electrical transformers. Carbide maintained a relationship with PFI by providing technical assistance and formula recommendations; Carbide also provided assistance to PFI when it had a temperature problem with the coating. In 1984 PFI received an odorous, discolored batch of VYES and returned the shipment. Carbide assured PFI that nothing was wrong with VYES and that the shipment was an aberration. Carbide assured Savin, in response to his concerns about the field equipment that had been painted with Weathercote-T, that VYES met Carbide's standards. PFI never passed along to Cooper Carbide's reassurances and representations of VYES' quality.
 
 
 4
 Cooper was one of PFI's customers. Cooper painted thousands of electrical transformers with Weathercote-T. In 1986 or 1987 it began experiencing numerous field failures and learned that Weathercote-T contained VYES. The paint failed in the field apparently because it could not withstand high temperatures. The paint blistered and delaminated, thereby exposing the transformers to corrosion by the elements. Cooper incurred high costs in correcting the problem by sandblasting and repainting the equipment. Cooper says that, before the field failures, it had continuously sought assurances from PFI that PFI would inform Cooper of any changes in the formulation of Weathercote-T. PFI assured Cooper that there were no such changes. PFI never disclosed any change because it was not informed of any problems with VYES by Carbide. Carbide, in fact, had been struggling with a color instability problem, the equivalent of a thermal instability problem. In early 1984, over 94% of the most recent batch of VYES failed Carbide's minimum product specifications. Carbide never informed any of its customers of the problems it was having. It did not disclose any problem in its 1980, 1984 or 1985 product literature.
 
 
 5
 Savin met with the representatives of another paint-producing company in 1989. He learned from them that they had been experiencing the same problems with their coatings. One of the representatives also told Savin that a Carbide representative had admitted to him that there was a problem with VYES. Carbide, in response to Savin's inquiry, continued to deny any problem. Carbide asserts that there is no evidence that the failures in VYES caused the delamination and blistering of Weathercote-T.
 
 
 6
 Carbide and PFI eventually agreed to discuss a settlement. They entered into an agreement tolling the statute of limitations for four months. PFI then filed its complaint in the United States District Court for the Southern District of Ohio, alleging negligence and breach of contract and warranty. On October 8, 1991, PFI entered into a second tolling agreement with Carbide and voluntarily dismissed its claims. PFI refiled on September 30, 1992; this time it alleged only breach of contract and breach of warranty. In 1991 Cooper filed suit against PFI in Wisconsin state court alleging breach of contract, breach of warranty, strict liability, negligence and misrepresentation. PFI removed the action to the United States District Court for the Eastern District of Wisconsin. Cooper's claimed damages included repair costs, lost sales, lost profits, a diminished goodwill and business reputation, and money. PFI cross-claimed for indemnification asserting that Carbide was primarily liable for the alleged damages. PFI's lawsuit against Carbide was transferred to the Eastern District of Wisconsin and consolidated with Cooper's action. The district court granted summary judgment to Carbide on all the claims against it. The court later entered a Rule 54(b) judgment. Cooper and PFI now appeal.
 
 II
 DISCUSSION
 A. Cooper's Claims Against Carbide
 1. Breach of contract and warranty
 
 7
 Cooper admits that it never dealt directly with Carbide and that it was never a party to any contract with Carbide. Cooper, therefore, is claiming that it was a third-party beneficiary to the contract between PFI and Carbide.[2] A person cannot assert contractual rights as a third-party beneficiary to a contract unless that person was an intended beneficiary of the contract. See TRINOVA Corp. v. Pilkington Bros., 70 Ohio St.3d 271, 638 N.E.2d 572, 576-77 (1994) (quoting Restatement (Second) of Contracts § 302 (1981)); Mercado v. Mitchell, 83 Wis.2d 17, 264 N.W.2d 532, 538 (1978) (stating that third party "must show that the contract was entered into by the parties directly and primarily for his benefit"). Under Ohio law, "there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party." TRINOVA Corp., 638 N.E.2d at 577.
 
 
 8
 The PFI-Carbide contract was clearly not entered into for the benefit of Cooper. Cooper's arguments to the contrary all boil down to an assertion that Carbide knew that PFI was selling paint containing VYES to Cooper or companies like Cooper. Yet the fact that a seller knows that an intermediate buyer of its products will immediately resell the product is not sufficient to make the ultimate buyer an intended beneficiary of the original sales contract. Commonwealth Propane Co. v. Petrosol Int'l, Inc., 818 F.2d 522, 531-32 (6th Cir.1987) (Ohio law). Contract law significantly circumscribes the ability of remote parties to enforce others' promises for good reasons, one of which is to prevent the nearly limitless liability that Cooper's theory would impose. There is no evidence in this case that Carbide and PFI entered into a contract with the intent to benefit Cooper or that the parties intended to create third-party-beneficiary rights. Cooper is, at best, a mere incidental beneficiary. We therefore agree with the district court that Cooper cannot maintain its claims against Carbide for breach of contract and warranty. See id.; St. Paul Fire & Marine Ins. Co. v. R.V. World, 62 Ohio App.3d 535, 577 N.E.2d 72, 75 (1989); Northridge Co. v. W.R. Grace & Co., 162 Wis.2d 918, 471 N.W.2d 179, 187 n. 15 (1991).
 
 2. Tort Claims
 
 9
 The district court held that Cooper's tort claims were barred by the "economic loss" doctrine. In Wisconsin, "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories." Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc., 148 Wis.2d 910, 437 N.W.2d 213, 217-18 (1989). Cooper urges that economic loss is recoverable in tort when there is no privity between the parties, as in the case of Carbide and Cooper. Applying Wisconsin law, however, we have already stated otherwise: "Privity of contract is not an element of the economic loss doctrine." Miller v. United States Steel Corp., 902 F.2d 573, 575 (7th Cir.1990). We considered the issue again in Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295 (7th Cir.1991), repeating that "there is now substantial evidence that Wisconsin would decline in all circumstances to allow a negligence suit for the recovery of only economic damages, even when there is no contractual relationship between the parties." Id. at 1300.
 
 
 10
 Cooper insists that we have misread Wisconsin law; it urges that the Supreme Court of Wisconsin would hold that privity is an essential element of the economic loss doctrine. It notes that there was privity in Sunnyslope and that the Court of Appeals of Wisconsin has indicated that it does not believe that we have predicted correctly the course that the state's highest court will take when presented squarely with the issue. See Hap's Aerial Enters., Inc. v. General Aviation Corp., 173 Wis.2d 459, 496 N.W.2d 680, 682 & n. 4 (Ct.App.1992); see also Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.,151 Wis.2d 431, 444 N.W.2d 743, 748 (Ct.App.1989). After Hap's Aerial, then-Chief Judge Evans, now a member of this court, revisited the privity issue and reaffirmed Miller's assessment of Wisconsin law. See Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft, 849 F.Supp. 666 (E.D.Wis.), aff'd, 42 F.3d 1391 (7th Cir.1994) (unpublished). In a thoughtful discussion, Judge Evans concluded that the Hap's Aerial court was primarily concerned with cases involving negligent services or acts, not products, and that in any event the Supreme Court of Wisconsin had employed economic-loss-doctrine analysis in Northridge Co. v. W.R. Grace & Co., 162 Wis.2d 918, 471 N.W.2d 179 (1991), even though the parties there were not in privity, see id. at 187 n. 15. By all accounts, our case law has remained unchanged and is clear that privity is not a prerequisite to the application of the economic loss doctrine in Wisconsin; and there has been no intervening circumstance to cause us to reconsider Miller and Midwest Knitting. Those cases therefore bind this court.[3]
 
 
 11
 Cooper next points out that its complaint seeks to recover, among other things, damages for diminished goodwill and business reputation. Cooper then cites to a snippet in Miller where we juxtaposed commercial loss with "damage to person, property, or reputation." 902 F.2d at 574. Relying on this portion of Miller, Cooper claims that damages to goodwill and business reputation are recoverable in tort. Cooper, though, misses the point of the economic loss doctrine. In Miller we distinguished economic loss from "an injury to the plaintiff's person or property (property other than the product itself), the type of injury on which a products liability suit usually is founded." Id. Regardless of characterization, Cooper's alleged damage is typical economic loss. Economic losses can be direct or consequential. Northridge Co., 471 N.W.2d at 181-82. Direct economic loss includes the cost of repair or replacement, id., which is the main component of Cooper's alleged damages. Consequential economic loss includes all indirect loss, such as lost profits, resulting from the product's inability to perform. Id. at 182. Cooper's alleged damages to its business were caused because the product's quality was inferior; its repair costs, replacement costs and lost profits resulting therefrom are the epitome of commercial losses. The fact that Cooper characterizes some of its damages as loss of goodwill and business reputation "does not transform the nature of its injury." Id. at 184. When the loss to goodwill results from the failure of a product to perform as expected, and not from injury to another person or other property, those losses are commercial and are not recoverable in tort. See Krider Pharmacy & Gifts, Inc. v. Medi-Care Data Sys., Inc., 791 F.Supp. 221, 226 (E.D.Wis.1992). Any other holding would swallow the economic loss doctrine; parties would be able to end-run the law of contract and the Uniform Commercial Code by the simple expedient of pleading that their commercial losses--repair costs, lost profits and the like--included damage to business goodwill. Because Cooper has no "claim for personal injury or physical harm to property other than the defective product itself," its remedy "lies in a breach of warranty claim, not in a claim in tort." Northridge Co., 471 N.W.2d at 182; see Wis. Stat. § 402.715; Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc., 148 Wis.2d 910, 437 N.W.2d 213, 217 (1989) ("Contract law, the law of warranty and the Uniform Commercial Code are designed to allow the parties to allocate the risk of product failure.").
 
 
 12
 Cooper's final argument to escape the confines of commercial law is to assert that its misrepresentation claims, though arising in tort, are an exception to the economic loss doctrine. This court, however, has already predicted that Wisconsin would not allow a negligence or strict liability misrepresentation claim seeking to recover economic damages. See Badger Pharmacal, Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 628 (7th Cir.1993). We perceive no basis for treating Cooper's intentional misrepresentation claim any differently. Cooper's misrepresentation claims assert that Carbide misrepresented the properties (or failed to speak when it had a duty to do so) of VYES to PFI, which in turn was unable to keep Cooper abreast of potential problems with Weathercote-T. Misrepresentations such as these, that ultimately concern the quality of the product sold, are properly remedied through claims for breach of warranty.[4] Cooper could have and maybe did (its claims against PFI are still pending) extract an express warranty from PFI to remedy any misrepresentations related to product quality. A perfectly workable commercial chain therefore exists for recovery: Cooper sues PFI using commercial law for claims relating to the sale of Weathercote-T, and PFI sues Carbide using the same set of principles for claims relating to the sale of VYES. "The insight behind the [economic loss] doctrine is that commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles...." Miller, 902 F.2d at 575.[5]
 
 B. PFI's Claims Against Carbide
 1. Breach of contract and warranty
 
 13
 The district court held that PFI's contract and warranty claims were barred by Ohio's statute of limitations.[6] In its view, the stipulation entered into by the parties was not sufficient to alter § 1302.98 of Ohio's version of the Uniform Commercial Code. Section 1302.98 states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Ohio Rev.Code Ann. § 1302.98(A). A cause of action for breach of contract accrues when the breach occurs; a cause of action for breach of warranty accrues when tender of delivery is made. See id. § 1302.98(B). Thus, in this case, the limitations period began to run when Carbide delivered the shipments to PFI. Carbide made deliveries of VYES to PFI from March 16, 1984 to October 1, 1986. Many of PFI's claims based on the earlier deliveries were already barred by the time Carbide and PFI entered into the four-month tolling agreement on August 10, 1989. Carbide concedes that the claims relating to the later deliveries were then timely filed in court on December 18, 1989.
 
 
 14
 On October 8, 1991, PFI and Carbide entered into a stipulation of voluntary dismissal. That stipulation provided:
 
 
 15
 Pursuant to Fed.R.Civ.P. 41(a)(1), plaintiff [PFI] and defendant [Carbide], by and through counsel, hereby stipulate that the within action is dismissed, at plaintiff's costs, without prejudice to refiling in federal court within the time provided therefor by Section 2305.19 of the Ohio Revised Code.
 
 
 16
 R.97 at 30. Section 2305.19 of the Ohio Revised Code provides:
 
 
 17
 In an action commenced, ... if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff ... may commence a new action within one year after such date.
 
 
 18
 Ohio Rev.Code Ann. § 2305.19.
 
 
 19
 PFI then filed this action in September 1992, within one year of the stipulation of voluntary dismissal. Nevertheless, the district court held that PFI's contract claims were barred by Ohio's U.C.C. statute of limitations, which provides:
 
 
 20
 Where an action commenced within the time limited by division (A) of this section is so terminated as to leave available a remedy by another action for the same breach, such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance....
 
 
 21
 Ohio Rev.Code Ann. § 1302.98(C). The district court held, and Carbide insists on appeal, that PFI's claims are barred because it voluntarily dismissed the first action and because, in any event, PFI did not refile within six months of the dismissal. Carbide asserts that the stipulation entered into by the parties was not explicit enough to preempt § 1302.98(C). The district court agreed with PFI and held that, if parties want to preempt § 1302.98(C), "they must do so in specific terms." R.97 at 32.
 
 
 22
 We cannot agree. Parties can vary the effect of many U.C.C. provisions, including the provisions contained in § 1302, by agreement. Ohio Rev.Code Ann. § 1301.02(C); see Miles v. N.J. Motors, Inc., 44 Ohio App.2d 351, 338 N.E.2d 784, 788 (1975). The district court conceded as much but found that explicit language was necessary to preempt § 1302.98. Yet neither the court nor Carbide has cited any authority for that proposition. The parties' stipulation agreement provides that the dismissal was without prejudice to refiling "within the time provided therefor by Section 2305.19 of the Ohio Revised Code." The time "provided" by § 2305.19 is one year; the effect of this agreement was to alter the effect of the otherwise applicable U.C.C. limitations period. Our interpretation of the stipulation agreement is confirmed by the fact that Carbide's interpretation renders the stipulation without any function whatsoever. Carbide claims that the stipulation preserved only PFI's tort claims, but they would have been preserved under § 2305.19 absent any stipulation. At oral argument, counsel for Carbide defended the district court's decision with reasoning to the effect that § 1302.98(C) cannot be waived. But affirmative defenses, including statutes of limitations, can be waived if they are not pleaded. It would be anomalous to say that § 1302.98, which can be waived by silence and inaction, cannot be waived by agreement unless the parties use the most explicit words imaginable. The agreement here is clear enough; Carbide agreed that PFI could refile its "action," including its contract and warranty claims, within the specified time period of one year. We believe that the most sensible reading of this stipulation is that PFI had a year within which to refile its claims. It did file within that period, so the district court improperly dismissed them as time barred.
 
 
 23
 We do agree with the district court, however, that Carbide did not extend any warranties to PFI of future performance. PFI contends that its action did not accrue until 1986 or 1987 when it learned of the field failures. It relies on § 1302.98(B): "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods ..., the cause of action accrues when the breach is or should have been discovered." Ohio Rev.Code Ann. § 1302.98(B). Carbide, however, did not provide PFI with a warranty explicitly extending to future performance. The courts have applied a stringent standard in determining whether a warranty explicitly extends to future performance. Standard Alliance Indus. v. Black Clawson Co., 587 F.2d 813, 820 (6th Cir.1978) (Ohio law), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); see also Stumler v. Ferry-Morse Seed Co., 644 F.2d 667 (7th Cir.1981). In order for such a warranty to exist, "there must be specific reference to a future time in the warranty." Standard Alliance, 587 F.2d at 820. The only mention of time in any document in this case is that vinyl paints maintain their good appearance for "many years." That statement cannot satisfy the tough burden set forth in Standard Alliance to create a warranty of future performance.
 
 2. Indemnity
 
 24
 When Cooper sued PFI, PFI cross-claimed against Carbide for indemnification. Insofar as PFI's indemnity claim sounds in tort, it is barred by the economic loss doctrine.[7] Nor can PFI recover under an implied contract of indemnity. Such contracts exist only when the liable party is so related to another that the other should be required to pay for the wrongs committed by the liable party. Motorists Mut. Ins. Co. v. Huron Rd. Hosp., 73 Ohio St.3d 391, 653 N.E.2d 235, 238 (1995). Special relationships that give rise to implied contracts of indemnity include "wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant." Id. (internal quotation and citation omitted). On the other hand, the relationship between vendor and vendee is insufficient to give rise to such an implied indemnity right. Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F.Supp. 1027, 1065 (D.S.C.1993) ("The courts have uniformly held that [the] vendor-vendee relationship does not constitute a 'special' or 'unique' circumstance justifying implied contractual indemnity."), aff'd per curiam 46 F.3d 1125 (4th Cir.1995) (unpublished). The buyer-seller relationship in this case is unremarkable and does not create any implied indemnity rights.
 
 
 25
 There is, moreover, a more fundamental problem with PFI's implied rights. The economic loss doctrine dictates that implied indemnity claims of the sort claimed by PFI have no place in a suit for commercial losses governed by the U.C.C.[8] Because Cooper cannot recover in tort from Carbide directly on account of the economic loss doctrine, it would be inappropriate to allow PFI to assert indemnity, which recognizes the "right of a person who has been compelled to pay what another should have paid to require complete reimbursement." Mahathiraj v. Columbia Gas of Ohio, 84 Ohio App.3d 554, 617 N.E.2d 737, 743 (1992). If Cooper is relegated solely to contract theories (and, indeed, in this case can obtain no recovery from Carbide), it makes no sense to allow PFI to recover Cooper's economic damages from Carbide absent contract or warranty. See Bethlehem Steel Corp. v. Chicago Eastern Corp., 863 F.2d 508, 521-25 (7th Cir.1988); Myrtle Beach, 843 F. Supp. at 1065. Rather, commercial law provides the appropriate basis for PFI, a commercial buyer in privity with Carbide, to recover any commercial losses it may have suffered.
 
 
 26
 We express no opinion on the damages that may be available to PFI under its breach of contract and warranty claims, but we note that the U.C.C. allows for the recovery of consequential damages in certain situations. See Ohio Rev.Code Ann. § 1302.89(B). Whether PFI can recover consequential damages from Carbide under the U.C.C. (including its viable warranty and contract theories) to compensate it for any Cooper-related liability is an issue we leave for the district court on remand. PFI's contract and warranty claims are the proper vehicles through which to resolve this commercial dispute.
 
 Conclusion
 
 27
 For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. Cooper's motion for certification to the Supreme Court of Wisconsin is denied.
 
 
 28
 AFFIRMED in part, R EVERSED in part and R EMANDED.
 
 
 
 [1]
 At the request of the court, the parties submitted supplemental memoranda on the validity of the district court's certification of this appeal under Federal Rule of Civil Procedure 54(b). After reviewing these submissions, we are satisfied that the district court acted well within its discretion in granting certification. As required by Rule 54(b), this action involves either multiple claims or parties; indeed, this case involves both. All the claims have been resolved with respect to a party (Carbide); Cooper and PFI are the only parties left in the district court. Having resolved all the claims against one party, the court was permitted to certify that judgment for immediate appeal. See National Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil, 784 F.2d 817, 821 (7th Cir.1986)
 Before directing the entry of judgment, the district court expressly found, as Rule 54(b) requires, that there was no just reason for delay. Although the court did not explicitly set forth its reasons for that finding in its order, its reasons are apparent from the record insofar as the court incorporated by reference the rationale of Cooper's motion in the Rule 54(b) order. See United States v. Ettrick Wood Prods., 916 F.2d 1211, 1218 (7th Cir.1990) (per curiam) (indicating that lack of explanation does not defeat appellate jurisdiction when reasons are apparent from record); Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 948-49 (7th Cir.1980) (same); see also Auriemma v. City of Chicago, 906 F.2d 312, 313 (7th Cir.1990) (remanding case for district court to give reasons for Rule 54(b) certification because district court's basis for finding no just reason for delay was not apparent in court's order); Ettrick Wood Prods., 916 F.2d at 1218 ("Although Rule 54(b) does not expressly require the district court to state its reasons for entering judgment, it is important that the court explain its reasoning, both for its own and the appellate court's benefit.").
 The Supreme Court has explained that "the decision to certify [is] with good reason left to the sound judicial discretion of the district court." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); see Bank of Lincolnwood, 622 F.2d at 948-49. From the perspective of the district court, there was no just cause for delaying the entry of judgment. Affirmance would terminate the participation of one party in this litigation and permit the remainder of the litigation to be resolved in a far more focused manner. Nor would judicial resources be wasted at the appellate level by the consideration of this appeal. See generally Horn v. Transcon Lines, Inc., 898 F.2d 589, 592-93 (7th Cir.1990) (noting that possibility that remaining claims may moot appeal weighs against immediate appeal). Many of the issues here are unique to the allegations involving Carbide and therefore would not require this court to revisit the issues in the event of a second appeal. Cf. Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1162-63 (7th Cir.1997). For instance, Cooper's contention that the economic loss doctrine does not apply in the absence of privity of contract is germane only to its claims against Carbide because there is no question that there is privity between Cooper and PFI. Cooper's third-party-beneficiary claims are distinct for the same reason. Likewise, the district court's application of the Ohio statute of limitations to adjudicate the claims of PFI against Carbide is also unique to those claims. We conclude that the district court did not abuse its discretion in deciding, based on a supported determination that there was no just reason for delay, to enter judgment on the claims against Carbide. Accordingly, "[t]here is no reason why [Carbide] should have to wait for the outcome of the battle between [Cooper and PFI] in order to get a definitive resolution of [its] rights[,]" Walker v. Maccabees Mut. Life Ins. Co., 753 F.2d 599, 601 (7th Cir.1985); accord National Metalcrafters, 784 F.2d at 821; and we have jurisdiction over this appeal, cf. McMunn v. Hertz Equip. Rental Corp., 791 F.2d 88, 90-91 (7th Cir.1986) (noting that Rule 54(b) allows immediate appeal from orders dismissing third-party claims because such an order is definitive as to third-party).
 
 
 [2]
 Carbide asserts that Ohio law should govern Cooper's claim because PFI entered into the contract with Carbide in Ohio, ordered VYES from Ohio, received VYES in Ohio and used VYES in its manufacturing process in Ohio. Cooper concedes that Ohio law governs if there is a conflict between Ohio and Wisconsin law. Cooper does not perceive any such conflict
 
 
 [3]
 We decline Cooper's request to certify the issue to the Supreme Court of Wisconsin. See National Cycle, Inc. v. Savoy Reinsurance Co. Ltd., 938 F.2d 61, 64 (7th Cir.1991)
 
 
 [4]
 See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995)
 
 
 [5]
 Cooper invites our attention to D'Huyvetter v. A.O. Smith Harvestore Products, 164 Wis.2d 306, 475 N.W.2d 587 (1991), a case in which the court held that the economic loss doctrine barred the plaintiffs' negligence and strict liability claims without holding the same with respect to the misrepresentation claims. It does not appear, however, that the defendants raised the issue. The case also predates Badger Pharmacal. We note that the Supreme Court of Wisconsin has held open the possibility that the economic loss doctrine precludes misrepresentation claims:
 The defendant argues that the plaintiffs' claims in nuisance, deceit, strict liability for misrepresentation, and negligent misrepresentation are barred because the plaintiffs have not suffered physical harm to property. Because we conclude that the plaintiffs have alleged physical harm to property rather than solely economic loss, the defendant's argument has no merit.
 Northridge Co., 471 N.W.2d at 187 n. 15.
 
 
 [6]
 The parties agree that Ohio law applies
 
 
 [7]
 Cf. Lawyers Cooperative Publishing Co. v. Muething, 65 Ohio St.3d 273, 603 N.E.2d 969, 972 (1992) (noting that commercial buyer may not use tort theories to recover economic losses in absence of personal injury or damage to other property); Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n, 54 Ohio St.3d 1, 560 N.E.2d 206, 208 (1990) ("[T]ort liability may not be imposed for purely economic damages."); Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio St.3d 40, 537 N.E.2d 624, 630-35 (1989) (holding that commercial buyer seeking to recover economic loss from seller can maintain contract action for breach of warranty under U.C.C., but not a strict liability or negligence action)
 
 
 [8]
 See Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351-52 (2d Cir.1986); see also Slemmons v. Ciba-Geigy Corp., 57 Ohio App.2d 43, 385 N.E.2d 298, 307-08 (1978)